**WILLIAM T. ALVARADO SALES CO.,** and Spee-Dee Checkout Systems, Inc., Appellants,

v.

Sidney S. **RUBALOFF** and Abraham M. Gross, individually and doing business as Check-A-Matic Co., and Du-More Fixture Co., Inc., Appellees.

No. 15855.

United States Court of Appeals Ninth Circuit.

Feb. 6, 1959.

Rehearing Denied March 9, 1959.

Fred H. Miller, Hazard & Miller, Los Angeles, Cal., Earl & Webb, Kalamazoo, Mich., for appellants.

Bernard Kriegel, Paul P. Selvin, Lynn H. Latta, Los Angeles, Cal., for appellees.

Before BARNES, HAMLEY and JERTBERG, Circuit Judges.

HAMLEY, Circuit Judge.

This is a patent infringement suit between competing manufacturers and sellers of supermarket check stands. The trial court found and concluded that the patent is invalid because of the prior art and for lack of invention. Without reaching the question of infringement, therefore, the court entered judgments for the defendants. Plaintiffs appeal.

Plaintiff Spee-Dee Checkout Systems, Inc., is the owner of United States patent No. 2,599,909, issued June 10, 1952, to Will L. George. Plaintiff William T. Alvarado Sales Co. is the exclusive licensee of this patent in the state of California. Plaintiffs joined in bringing two patent infringement suits which were thereafter consolidated for trial and have been consolidated for appeal. In one suit Sidney S. Rubaloff and Abraham M. Gross, individually and as a partnership d. b. a. Check-A-Matic Co., were named defendants. In the other the defendant is Du-More Fixture Co., Inc.

The object of the patent, as stated therein, is to provide a stand for checking out the items of a customer's purchase in a grocery or other retail merchandising store. The stand is designed to speed up the operation of checking each item and to reduce the possibility of error in missing items or checking a single item twice.

The structure of the patented check stand is not complex. A rotatable receiving table is actuated by a concealed motor controlled by a switch operated by the checker. This turntable adjoins a discharge counter so that articles may be slid from the receiving table to the discharge counter. A support panel, constructed slightly above the quadrant of the turntable farthest from the customer and closest to the checker, provides a convenient place for the cash register. The left side of the support panel may also perform the additional function of acting as a stop for the articles being purchased. Provision is made for the installation of a separate stop bar on the receiving table if this is desired.[1]

The trial court found that each of the individual components of the claimed invention was well known in the prior art and was in public use or on public sale in the United States more than one year prior to the date of the application for the George patent.[2] The court also held that the utilization of these old components in this patent made no substantial advancement or improvement over the prior art in efficiency, function, relationship, or interaction of the parts and components one to the other.[3] It was on the basis of these findings and conclusions that the trial court determined that the patent is invalid.

1. The claims in suit are Nos. 3, 5, 6, and 7 of the patent. The above description closely follows claim No. 6, and is fairly illustrative of the patent.

2. The trial court stated that examples of the prior art are to be found in the following patents: Tench – 756,298; Brock et al. – 1,028,670; Goodrich – 1,071,004; Johnson – 1,143,279; Florence – 1,400,-948; Wilcox – 1,664,055; Muse – 2,237,-080; Turnham – 2,242,408; Price – 2,-268,897; Campbell – 2,305,604; and Bradley – 2,317,438.

3. Amplifying this finding and conclusion, the court said:
 "8. * * * The patentee has not produced any 'unusual or surprising consequences' from the aggravation of the old elements, the patent does not possess any patentable improvements over the prior art, and no patentable invention is contained or disclosed therein.

 "9. The function of each of the various components of the alleged disclosed invention is not different from the function of each of said components as disclosed in the prior art and as disclosed in devices in prior public use or on public sale; nor is there any new relationship, coaction, or surprising result in the aggregation of the various components of the alleged invention.

 "10. The difference between the alleged invention and the prior art was such that the alleged invention was obvious at the time of the alleged invention to a person having ordinary skill in the art. * * * *"

Appellants specify as error the trial court's finding that each of the individual components of the claimed invention was well known in the prior art. Appellants assert that this finding is not based upon substantial evidence.

The only argument we find in the body of appellants' brief in support of this specification is the observation that appellees had to go out of the "check stand" art into the "remote art of industrial conveyors" to find a turntable. Appellants are here referring to the turntable which is used as part of a paper milk bottle packaging machine covered by the Price patent.

Appellants are not correct in asserting that the only prior use of a turntable relied upon by appellees is that described in the Price patent. Appellees also rely on the Florence patent, which teaches the use of a turntable in connection with the display of groceries for customer selection.

It is true, as appellants contend, that there is no disclosure in the prior art of a turntable having been used in a check stand. But the display of groceries for customer selection and the packaging of paper milk bottles are, along with check stands, part of the art of handling small articles. If a component of a device used in one field of this art is old, it is old in all fields of that art. A showing that such a component has been put to a new use may be relevant in determining whether there is a patentable combination of old components, but it does not tend to show that the component is not old.

There is substantial evidence to support the finding of fact that all components of the claimed invention are old in the prior art. The turntable component has already been discussed. The use of a register support, though not in the position and with all of the advantages shown in the George patent, is taught in the Bradley and Muse patents. Discharge tables are shown in the same prior patents and aside from these patents have long been in public use. Stops to hinder the movement of articles or to change the direction of movement are shown in the Bradley and Price patents.[4]

█ The finding of fact that each of the component parts of the device described in the George patent was well known in the prior art is not clearly erroneous.

█ In view of this finding it follows that the manner in which any single component of the George patent is utilized therein will not suffice to establish patentability. The taking over of devices from one field of use to another does not constitute invention, even though they be put to a new use. More than a new advantage of the old component must be discovered in order to claim invention. General Electric Co. v. Jewel Co., 326 U.S. 242, 249, 66 S.Ct. 81, 90 L. Ed. 43.

Therefore, if the George patent is valid, it must be for the reason that it

---

4. At one point in their opening brief appellants appear to recognize that all components of the claimed invention are old in the prior art. They say: " * * * Nor did George utilize or rely on a newly discovered element or tool to gain his ends. He used the same means available to all his predecessors but added his touch of inventive skill to make a materially improved device. * * * " At the opening of the trial, counsel for appellants told the court: " * * * The parts are old, admittedly, but they are brought together in a novel action, as we intend to show. * * * " A few minutes later this colloquy occurred between the trial court and counsel for appellants:

"The Court: In there anything new in any of this apparatus? You have taken various items that have been in the public domain and combined them in something that you claim is new, but is there anything new?

"Mr. Webb: No.

"The Court: Is there any part that is new, any claim of anything new?

"Mr. Webb: Broadly speaking, your Honor, we do not claim any specific item is absolutely new and cannot be found in the prior art. We claim that the combination is new in this art and that it gets a new and un-obvious result, as we will show."

specifies an interrelation and coaction of old components sufficiently novel to meet the constitutional standard of invention.

 The trial court, as we have noted, held that the patent in suit did not specify an interrelation and coaction of old components sufficiently novel to meet this test.[5] Appellants challenge both the findings of fact and the conclusions of law upon which this determination is predicated.[6]

The trial court did not set out in its findings of fact a factual comparison between the functioning of the components as utilized in the George patent and their functioning elsewhere. We therefore summarize the significant evidence which, as appellants state, is not seriously controverted.

The turntable utilized in the George patent performs the function of mechanically moving the customer's articles from the point where they are placed on the receiving table to a point within reach of the checker. In other check stands the articles after being placed on the receiving table are conveyed to the checker by means of U-shaped pull frames (Turnham and Bradley patents), counter buggies or rollers (Bradley patent), conveyor belts (Bradley and Muse patents), or by hand.

When a turntable is used to convey articles from the receiving stand to the checker, the arcuate movement of the turntable conveys the articles transversely away from the customer and towards the checker. This tends to bring the articles within easy reach and vision of the checker and his conveniently located cash register. It also operates to reduce the likelihood that articles will be inadvertently or fraudulently passed by without checking.

The prior art which comes closest to having the same advantages is the Bradley patent using a conveyor belt. When an attendant is used in the operation of the Bradley device as the patent contemplates, he stands on the checker's side of the receiving table. This naturally results in the placing of most articles on the side of the conveyor belt closest to the checker, and so brings them into convenient reach of the checker.

If a customer, rather than an attendant, unloads the articles upon the belt, a substantial number of the articles are likely to be placed on the customer's side of the belt. To the extent that this is done, either by the customer or the attendant, the articles will come to a stop at a place which is less convenient for the checker. As a matter of fact, however, the majority of such belts are eighteen inches wide. Articles placed anywhere upon a belt of that width would be within relatively easy reach of the checker. In addition it is the practice of some checkers to select items from the turntable or belt at random, or for the purpose of checking like articles together, without waiting for them to reach the stop bar. Where this is the practice it is probably fair to say that it makes little difference whether a turntable or conveyor belt is used.[7]

---

5. See footnote 3.

6. While denominated a finding of fact, this determination involves both a factual finding and a legal conclusion. What the components of the claimed invention do in the combination, as compared to what they do out of it, is a question of fact. Whether the additional or different functions, if any, which the components perform in the combination meet the standard of invention is a question of law. See Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., concurring opinion by Mr. Justice Douglas, 340 U.S. 147, 155, 71 S.Ct. 127, 95 L.Ed. 162;

Cee-Bee Chemical Co., Inc. v. Delco Chemicals, Inc., 9 Cir., 263 F.2d 150.

7. Appellants are not claiming that the placing of a turntable in a check stand alone constituted the invention. This is indicated by a letter dated September 29, 1953, from appellants' counsel to Check-A-Matic's attorney, reading in part: "I am in agreement with Mr. Latta that the structure disclosed in the Check-O-Matic [sic] circular does not infringe the George patent. * * *" This circular shows an early model Check-A-Matic stand which has a turntable receiving counter, but with a movable register

It is recognized that in the above discussion we have described these check stands and compared their strong and weak points in general terms. Both appellants and appellees will be able to suggest claimed advantages or disadvantages called to our attention in the briefs which are not mentioned in this opinion.[8] All such contentions have been carefully considered.

It is at once apparent, and appellees concede, that the George check stand is useful. The completeness with which appellees have imitated the essential features of the George device is probably indicative of its superior qualities. See Florence-Mayo Nuway Co. v. Hardy, 4 Cir., 168 F.2d 778, 782.

■ But the fact that old components have been put together in a way which had not been thought of before, with good results following, is not alone sufficient to establish patentability. As stated in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 153, 71 S.Ct. 127, 130, 95 L.Ed. 162:

"* * * When, for the first time, those elements were put to work for the supermarket type of stores, although each performed the same mechanical function for them that it had been known to perform, they produced results more striking, perhaps, than in any previous utilization. To bring these devices together and apply them to save the time of customer and checker was a good idea, but scores of progressive ideas in business are not patentable, and we conclude on the findings below that this one was not."

■ The A. & P. case also involved the patentability of a check stand. In that case, as in this, all components were old in the art, and the question was whether they constituted a patentable combination or a nonpatentable aggregation. Concerning this question the Supreme

Court observed that courts should scrutinize combination patent claims "with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. * * *"

Stating and applying what it considered to be the appropriate test in such cases, the Supreme Court there said:

"* * * The conjunction or concert of known elements must contribute something; only when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable. Elements may, of course, especially in chemistry or electronics, take on some new quality or function from being brought into concert, but this is not a usual result of uniting elements old in mechanics. This case is wanting in any unusual or surprising consequences from the unification of the elements here concerned * * *.

"* * * This counter does what a store counter always has done—it supports merchandise at a convenient height while the customer makes his purchases and the merchant his sales. The three-sided rack will draw or push goods put within it from one place to another—just what any such a rack would do on any smooth surface—and the guide rails keep it from falling or sliding off from the counter, as guide rails have ever done. Two and two have been added together, and still they make only four."

■ Applying the test of the A. & P. case to the uncontroverted facts before us here, we hold that the trial court did not err in concluding that the George device is a nonpatentable aggregation of old components and therefore invalid. Its components do not perform any additional or different function in the combination than they perform out of it. To be sure, they perform this same func-

stand which does not overhang a quadrant of the turntable.

8. Appellants, for example, also contend

that the discharge counter coacts in a novel manner with the register support panel.

tion differently, and perhaps better. This difference, and betterment, evidences the practical application of a good idea. It is not, however, an idea which in practice has produced such unusual or surprising consequences or has so added to the total stock of knowledge that it represents invention in the constitutional sense.

Affirmed.