**SARKES TARZIAN, INC., Plaintiff-Appellant, Cross-Appellee,**

v.

**PHILCO CORPORATION and Radio Equipment Company, Inc., Defendants-Appellees, Cross-Appellants.**

**Nos. 14974, 14975.**

United States Court of Appeals Seventh Circuit.

Oct. 14, 1965.

Rehearing Denied Nov. 2, 1965.

M. Hudson Rathburn, Chicago, Ill., C. B. Dutton, Indianapolis, Ind., Reginald K. Bailey, Clemens Hufmann, Chicago, Ill., Carl D. Overman, Indianapolis, Ind., Mason, Kolehmainen, Rathburn & Wyss, Chicago, Ill., Dutton, Kappes & Overman, Indianapolis, Ind., of counsel, for Sarkes Tarzian, Inc.

Thomas M. Ferrill, Jr., Allen V. Hazeltine, Philadelphia, Pa., William M. Evans, Indianapolis, Ind., Bose, Buchanan, McKinney & Evans, Indianapolis, Ind., of counsel, for Philco Corp.

Before DUFFY, KNOCH and SWYGERT, Circuit Judges.

DUFFY, Circuit Judge.

The complaint herein charged infringement of sixteen claims of Krepps Patent No. 2,665,377, entitled "Universal Tuning System for Television Receivers." The patent in suit contained twenty-three claims.

The Krepps patent relates to a VHF tuner which is capable of selectively receiving VHF television channels 2 to 13, inclusive. By means of extra switch positions the tuner may be adapted to cooperate with any preceding UHF tuning device that the set might contain. The patent explains that the tuner can func-

tion with a preceding UHF tuner, either as a single superheterodyne or double superheterodyne system.

A second important aspect of the Krepps patent is its so called "unicontrol" feature. This feature includes electrical and mechanical elements which permit the knob which controls the fine tuning of the television set when receiving VHF signals, to act as a station selector knob during UHF reception.

Many references are made in the record to the TT2. The TT2 was a VHF tuner manufactured and sold by plaintiff in 1949. The TT2 had a double superheterodyne system in which the RF and mixer stages performed the same function for both VHF and UHF and the local oscillator was continuously energized during both VHF and UHF reception. Claim 17 of the Krepps patent differs in that it is directed to a single superheterodyne system; in that it requires de-energizing the local oscillator during UHF tuning reception; and in that it calls for supplying a UHF tuner energizing potential in the UHF tuner position.

Krepps, the inventor, joined plaintiff's organization in June 1950. One of his tasks was to develop a new VHF tuner which could be used with various UHF tuning devices which were expected to become available when UHF stations began broadcasting. By June 13, 1951, at the latest, plaintiff had built a complete sixteen position tuner. On that date this tuner was shown to Eland, a Philco engineer.

Sarkes Tarzian's sixteen position tuners which embodied the features of the invention in the Krepps patent, were publicly demonstrated and explained to the industry at Bridgeport on October 3, 1951. Two and a half months later, the application for the Krepps patent was filed. The patent was issued January 5, 1954 to J. E. Krepps. Thereafter it was assigned to plaintiff.

Shortly after the Krepps patent was issued, Philco became concerned with the question of infringement. Mr. Denk of Philco's patent department concluded

that Philco had infringed the extra position claims of the Krepps patent. He also concluded that Philco's 1955 line of television sets had infringed the "unicontrol" feature of the patent. In 1957, Philco discontinued all use of the "unicontrol" feature but kept the "extra position" single superheterodyne feature.

In 1950 and 1951, Philco worked on a tuner designated "T17" which was, in some respects, similar to the Krepps tuner. However, this tuner lacked "unicontrol" and other features of the Krepps tuner and was never put into public use.

Before the institution of this suit, Philco had repeatedly rejected plaintiff's proposal to determine the validity of the Krepps patent by a joint examination of Philco's alleged prior work.

When a license was offered to RCA under the Krepps patent, RCA analyzed the validity thereof. RCA was the discoverer of the "Bell paper" which frequently has been mentioned in Philco's brief. Plaintiff obtained a copy of this paper from Mr. Bell. Apparently, RCA concluded the Bell paper did not affect the validity of the Krepps patent, for after a thorough check by its patent department and recommendations of outside counsel, RCA took a $200,000 non-exclusive license under it.

Plaintiff offered Philco a license under the Krepps patent, but Philco rejected the offer and asserted it had invented the subject matter of the Krepps patent before Krepps had.

In 1960, plaintiff commenced infringement suits against some of the largest companies in the business. Five of these suits were begun in Indiana. The plaintiff actively prosecuted only the case against Philco, because it was the only one of the claimed infringers which asserted it had evidence of a prior invention of its own. The other cases were dismissed without prejudice pursuant to stipulation.

Plaintiff first offered Philco a license under the Krepps patent after RCA had taken its non-exclusive license. In April 1955, Mr. Ferrill promised to state Phil-

co's position "as soon as we are in a position to discuss the aforementioned patent. * * *" However, no reply was made, but in November 1955, plaintiff was asked to and did furnish Philco with a technical and legal interpretation of the patent claims.

By June 5, 1956, Philco had apparently evaluated the work and records relating to its T17 tuner, and concluded that the T17 invalidated the extra position claims of the Krepps patent. On June 6, Philco informed plaintiff that documents pertaining to Philco's prior work would remain "undisclosed."

Plaintiff commenced this suit on April 29, 1960. Early in 1961, both sides undertook an extensive program of pretrial discovery. An exchange of dates and documents took place in March 1961. The taking of depositions consumed forty-two days. All but two of the deponents were called by the defendants. This deposition evidence dealt largely with the alleged prior invention embodied in Philco's T17 tuner. No model of the T17 was ever located. The information indicated that Philco had declared the T17 tuner "dead" by October 15, 1951 and never had built it commercially.

Plaintiff's attorneys evaluated the information they had obtained by discovery and otherwise, and concluded it was doubtful that the patent claims in issue could be sustained. On March 20, 1962, plaintiff moved to have the complaint dismissed with prejudice and without costs to either party. Plaintiff's brief stated that it "presently regards its chances to succeed in this civil action as insufficient to justify the great further expense and inconvenience which will be entailed by the continuation of this litigation."

Defendants opposed the motion for dismissal. They demanded $85,000 for costs, attorney fees and expenses. On April 17, 1963, the District Court granted plaintiff's motion to dismiss with prejudice but gave the defendants the right to go to trial on their motion for attorney fees, costs and expenses. After a trial on this motion the Court, on October 4, 1964, awarded the defendants $27,181.36

for attorney fees and a special bill of costs in the sum of $10,133.85. This allowance of costs and attorney fees is the point at issue on this appeal.

The evidence which defendants presented as a basis for their motion for attorney fees and expenses, included items for secretarial time and prorated charges for Philco's library and the space of its patent department. Philco's counsel, Ferrill, claimed compensation for 135.8 days' work at $120 per day. For most of that period, Mr. Ferrill was Philco's house counsel receiving, as such, a salary of $120 per day.

The District Court allowed fees of $50,-591.18 but deducted $23,409.82. This deduction represented the amount two corporations had contributed to Philco to defray out-of-pocket costs incurred in the defense of the instant suit. These two companies had likewise been sued and were interested in having the Krepps patent declared invalid.

Defendants' cross-appeal for the purpose of having the $23,409.82 added to the award for attorney fees as well as an unspecified amount for attorney fees incurred subsequent to April 17, 1963, was, at least, constructively abandoned by defendants' failure to docket the cross-appeal seasonably or to obtain a docketing extension.

However, on this appeal, defendants urge that the District Court committed error in deducting the $23,409.82 which Philco had received from contributors interested in but not parties to this suit. Defendants also claimed error because the District Court did not allow attorney fees for dates subsequent to April 17, 1963.

35 U.S.C. 70, now 35 U.S.C. § 285, was amended in 1952 and the attorney fees' provision was worded to read: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." We, therefore, consider whether the instant case can be classified as "exceptional" so as to justify any award of attorney fees, and we also consider the claimed "abuse of discretion."

In Continental Art Co. v. Bertolozzi, 7 Cir., 232 F.2d 131 (1956), the District Court awarded attorney fees and made the finding that the plaintiff was "unjustified and unwarranted in charging infringement of the design patent and did not have a justifiable cause of action." We set aside the award of attorney fees saying—"There is nothing to indicate other than that plaintiff's counsel acted in good faith in bringing the suit * * *." (Page 134)

In Armour and Company v. Wilson and Company, 7 Cir., 274 F.2d 143, we again reversed an award of attorney fees to the prevailing party. We said at page 148—"It is easy to make charges of fraud, but the law rightfully insists that before legal rights may be based upon such charges, they must be established by clear and convincing evidence. The burden is on the party making charges of fraud to establish same by clear and definite proof. * * *"

We have held that the same statute applies to a patent infringer and that the infringer should not be liable for attorney fees unless he infringed a patent known to be valid. Binks v. Ransburg Electro-Coating Corp., 7 Cir., 281 F.2d 252.

■ Defendants have, in effect, charged plaintiff with fraudulent conduct in obtaining the patent, but we are of the view that the proof is not sufficient in this case to sustain such a charge. Furthermore, we think it is well established, at least in this Circuit, that attorney fees should not be awarded under 35 U.S.C. § 285 except to prevent gross injustice and where fraud and wrong-doing are clearly proved.

The District Court found Krepps had learned something from Philco's engineer, Eland, which the Court must have thought he incorporated into the claims of the patent; but Krepps' tuner differed in important respects from Philco's T17 tuner. Hence, assuming Krepps did learn something about Philco's T17, he would still be the originator of several important features claimed in the patent.

The trial court seemed to be influenced by the claim that plaintiff delayed its motion to dismiss in order to protect its right to receive royalty payments from the license issued to RCA. There was no evidence to this effect, and it must rest upon a conclusion which we think is not warranted.

Furthermore, the District Court's conclusion of law in this respect was incorrect. RCA had a non-exclusive license under all of the claims of the Krepps patent. A number of the claims of the Krepps patent were not in issue in the instant case. Under such circumstances, it seems doubtful that RCA could have avoided royalty payments even if plaintiff never had sued the defendants or had dismissed the suit at an earlier date.

The District Court found fault with plaintiff's failure to inform the patent office of the Bell device. There is no Bell device in evidence, and contrary to the Court's finding, the Bell patent was called to the attention of the Patent Office.

■ The District Court implied plaintiff had violated a duty to disclose certain prior art to the Patent Office during the prosecution of the patent application. We think, under the facts of this case, plaintiff should not be penalized for failure to disclose "prior art" items to the Patent Office when, at least, some of them were entirely unknown to the plaintiff at that time, and it is apparent that none of them was more pertinent than the prior art which was known to the Patent Office.

■ We hold, under the facts of this case, and pursuant to the rule well established in this Circuit, that the defendants should not have been allowed any attorney fees.

■ Plaintiff strongly objects to the award of $10,135 court costs. This includes $1,295.40 for one original and two copies of depositions introduced into evidence, and $184.43 for two sets of copies of exhibits. The costs also include $564.20, $6,319.07 and $1,770.75 for depositions in triplicate of Philco's present

and former employees. The allowance of costs for triplicate depositions would seem to be excessive. If triplicate copies can be charged for, why not costs for ten or a dozen copies so that everyone in Philco's patent department might have a personal copy. The costs that may properly be awarded to the prevailing party in a lawsuit is on a different basis than an award of attorney fees under 35 U.S.C. § 285. It has been well established in this Circuit that an award of costs is discretionary. Jones v. Schellenberger, 7 Cir., 225 F.2d 784, 794. We have gone a long way in holding that a district court's award of costs should not be disturbed unless there is a clear abuse of discretion. We therefore hold that, in the instant case, an abuse of discretion on the part of the trial judge was not shown in making the award of costs.

The judgment of the District Court is affirmed in part and reversed in part, each party will pay its own costs in this Court.