362 F.2d 777
 SCOVILL MANUFACTURING COMPANY, Plaintiff-Appellee,
v.
GOLDBLATT BROTHERS, INC., and The Iona Manufacturing Company, Defendants-Appellants.
SCOVILL MANUFACTURING COMPANY, Plaintiff-Appellee,
v.
CARSON PIRIE SCOTT & COMPANY and Waring Products Corporation, Defendants-Appellants.
 No. 15333.
 No. 15334.
 United States Court of Appeals Seventh Circuit.
 July 5, 1966.
 Rehearing Denied August 9, 1966.
 
 Thomas F. McWilliams, Chicago, Ill., for appellants.
 Bertha L. MacGregor, Englewood, Colo., Carl F. Geppert, Chicago, Ill., for appellee.
 Before HASTINGS, Chief Judge, and SCHNACKENBERG and CASTLE, Circuit Judges.
 CASTLE, Circuit Judge.
 
 
 1
 These appeals involve judgments entered by the District Court following the consolidated trial of two actions charging patent infringement. The appeal in No. 15333 is prosecuted by Goldblatt Brothers, Inc., and The Iona Manufacturing Company from the judgment order entered in an action in which Scovill Manufacturing Company, the plaintiff-appellee, charges Goldblatt with infringement of claims 9 through 14 of Seyfried's U. S. Reissue Patent No. 24,607 because of the sale by Goldblatt of blenders manufactured by Iona. Iona was permitted to intervene, and with Goldblatt filed answers asserting, inter alia, the invalidity of the reissue claims. The appeal in No. 15334 is by Carson Pirie Scott & Company and Waring Products Corporation from the judgment order entered in Scovill's suit charging Carsons with similar infringement because of the sale of a blender made by Waring, in which action Waring was permitted to intervene and with Carsons raised the issue of the validity of the reissue claims. Following trial of the issues the District Court filed a memorandum opinion and made and entered findings of fact and conclusions of law upon which it entered the judgments which are the subjects of these appeals. The court found that claims 9 through 14 of the reissue patent are valid and are infringed by the accused devices manufactured and sold by the defendants.
 
 
 2
 The subject matter of the patent in suit is a flexible coupling means for separable shafts, particularly such a means for operatively connecting the armature and agitator shafts of motor driven disintegrating food mixers also known as blenders or liquidizers. The record discloses that the original patent, Seyfried U. S. Patent No. 2,755,900, issued July 24, 1956 on an application filed October 16, 1952, and contained eight claims. The Reissue Patent No. 24,607, issued February 24, 1959, added claims 9 through 14, the claims in suit. Scovill is the owner of the patent by assignment.
 
 
 3
 The drawings and descriptions of the original and reissue patents are identical with one minor exception not here pertinent. The reissue patent differs from the original only in that it adds claims 9 through 14.
 
 
 4
 A factor common to all of the eight claims of the original patent is that each calls for a "flexible coupling means for drivingly connecting a pair of separable shafts" and "comprising a coupling member fixed on each of said shafts". The remaining language of each of these claims includes a detailed description of the form and shape of the flexible (preferably rubber) toothed member. And the specification recites that in referring to the drawings illustrating the flexible coupling members "it will be understood that these members are identical but one is mounted on the armature shaft with its teeth upwardly directed and the other is mounted on the agitator shaft with its teeth directed downwardly, engaging each other when the parts are in operative position." The claims and specification additionally disclose that the two identical coupling members which form the claimed "flexible coupling means" are shaped to be co-operatively interfitting, "the teeth of each member being spaced apart circumferentially to receive between them the teeth of the other coupling member when said members are in driving relationship", with the contact faces of the teeth of one member designed to register in maximum face area contact with the contact faces of the teeth of the corresponding member when the shafts are brought into alignment.
 
 
 5
 The factor common to claims 9 to 14 inclusive of the reissue patent, and which serves to distinguish them from claims 1 to 8 inclusive, is the introductory language of each of the added claims:
 
 
 6
 "In combination with a pair of separable shafts which are longitudinally and laterally movable relatively to each other, coupling means for drivingly connecting said shafts including a flexible coupling member fixed on one of said shafts comprising * * *" etc.
 
 
 7
 There follows in each of the added claims a description of the form and shape of such flexible member including details with respect to the contact face and the various inclined surfaces of the flexible toothed member in substantially the same language of a corresponding original claim but omitting the use of terminology which would indicate or call for the presence of an identical reciprocal member on the other shaft. Thus claims 9 to 14 inclusive do not define or describe in any manner the other coupling member which together with the flexible member described is to form the "coupling means" claimed. These added claims however do remove the limitation that the second coupling member, which together with the flexible member described is to form the "coupling means for drivingly connecting" the two shafts, be an identical flexible coupling member as is required in claims 1 to 8 inclusive. This broadens and enlarges the scope of the claims of the original patent.
 
 
 8
 Although other related and subsidiary issues are the subject of contentions made by the parties, we conceive the main contested issue presented on appeal to be whether the reissue claims 9 to 14 inclusive are "for the invention disclosed in the original patent", although not fully claimed therein, and therefore authorized by 35 U.S.C.A. § 251.[1]
 
 
 9
 On this phase of the case the District Court found that the patentee Seyfried had been under the erroneous impression that a patent claim specifying two or more elements would cover each of those elements separately, as well as in combination, and that his original patent claims would cover his flexible coupling whether he used one or two of the flexible members in the coupling; through this error he claimed less than he was entitled to claim in his original patent; the reissue claims 9 to 14 inclusive define the invention which the patentee intended to protect when he applied for his original patent; and that claims 9-14 of the reissue "cover the same invention as that disclosed in the original patent". The court concluded that the reissue patent covering the use of only one flexible member covers only matter disclosed in the original patent.
 
 
 10
 But neither the documentary evidence consisting of the patent claims, drawings and specification, nor the testimony of the expert witnesses support the court's finding that the reissue claims are confined to the invention disclosed in the original patent. As heretofore stated, the specification of the original patent required that it be understood that the coupling members "are identical". The plaintiff's expert witness, Charles B. Messenger, admitted that there is no reference any place in the specification to a different coupling member — any member other than the two co-operating members shown in the patent — for use with one of the coupling members shown in the patent; that there is no reference to two members to form a coupling means, where the members may be different; and that there is no reference to the use of a flexible coupling member with a rigid member to form the coupling means.[2] Defendants' expert witness, Carlton Hill, testified that the objects set forth in the original patent were to provide a separable flexible coupling means, which when coupled, would be self-finding, which would take care of any misalignment of the shafts and would eliminate vibration and noise, and that:
 
 
 11
 "In my opinion, the contribution made by Seyfried was the provision of a flexible coupling having identical teeth mating with each other, of a particular and specific configuration.
 
 
 12
 The configuration having been worked out in such a way that the identical teeth would give a maximum of cooperation.
 
 
 13
 Now, the contribution could have been no more than that because rubber couplings, flexible couplings, were old for the exact purposes that the patentee Seyfried stated. They were made in various forms.
 
 
 14
 The few patents I have discussed are examples of that. Therefore, as of the time Seyfried entered the field, the scope or extent of his contribution was the very limited one of the particular tooth form, and more importantly the co-operation between mating pairs of those teeth.
 
 
 15
 * * * * * *
 
 
 16
 My opinion is that they [reissue claims 9 to 14 inclusive] were not validly added because they are for an invention not disclosed — or purport to be for an invention not disclosed in the original patent.
 
 
 17
 And I perhaps should explain that. The whole concept of the original patent were these mating pairs of peculiarly shaped teeth and identical teeth, one pointing one way and one the other. There wasn't a word in the original patent, and I found none in the original file wrapper directed to use of one of these coupling members with anything other than an identical coupling member."
 
 
 18
 In addition to the documentary evidence afforded by the patent claims drawings and specification which speak for themselves, the agreement in the testimony of the opposing experts that the original patent disclosed only the use of identical flexible coupling members to form the "coupling means" claimed therein makes it evident that the finding of the District Court that the added re-issue claims are confined to the disclosures of the original patent is clearly erroneous.
 
 
 19
 The reissue claims dispense with the limitation of a pair of identical flexible coupling members called for by the original patent and attempt to broaden the scope of the patent to include a coupling means which includes but one of the flexible members described in the original claims 1 to 8 inclusive, in combination with an unspecified form of second co-operating coupling member which is undisclosed either generically or specifically in any manner by the original patent. By omission of the limitation requiring the presence of two identical flexible members to form the coupling means and thus extending reissue claims 9 to 14 inclusive to the use of but one such member the patentee in effect interpolated a new feature — the unspecified form of a second co-operating coupling member — neither described, suggested, nor indicated in the original patent. And, as early as 1887 it was pointed out in Parker and Whipple Company v. Yale Clock Co., 123 U.S. 87, 98, 8 S.Ct. 38, 31 L.Ed. 100, that "[l]etters-patent reissued for an invention substantially different from that embodied in the original patent are void and of no effect".
 
 
 20
 In a more recent decision regarding reissue patents which in our opinion is dispositive of the instant case, United States Industrial Chemicals, Inc. v. Carbide & Carbon Chemicals Corporation, 315 U.S. 668, 675-676, 62 S.Ct. 839, 843, 86 L.Ed. 1105, it is observed:
 
 
 21
 "The question is whether, in the light of the disclosure contained in the two patents, they are for the same invention. * * * If there be failure of disclosure in the original patent of matter claimed in the reissue, it will not aid the patentee that the new matter covered by the reissue was within his knowledge when he applied for his original patent."
 
 
 22
 Here the unspecified form of the second coupling member called for in reissue claims 9 to 14 inclusive to complete the coupling means is not disclosed in the original patent. It is new matter alien thereto. Thus, reissue claims 9 to 14 inclusive call for a different combination of coupling members — not for the same invention disclosed in the original patent.
 
 
 23
 We conclude that the District Court erred in holding reissue claims 9 to 14 inclusive valid. They are invalid, and there can be no infringement[3] of invalid claims. Toro Manufacturing Corporation v. Jacobsen Manufacturing Company, 7 Cir., 357 F.2d 901, 904; Enterprise Railway Equipment Co. v. Keystone Railway Equipment Co., 7 Cir., 267 F.2d 102; Simmons Company v. Hill-Rom Company, 7 Cir., 352 F.2d 886.
 
 
 24
 In each of the appeals the judgment order of the District Court appealed from is reversed.
 
 
 25
 Reversed.
 
 
 
 Notes:
 
 
 [1]
 35 U.S.C.A. § 251 provides in pertinent part:
 "Whenever any patent is, through error without any deceptive intention, deemed wholly or partly inoperative or invalid * * * by reason of the patentee claiming more or less than he had a right to claim in the patent, the Commissioner shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent, * * *"
 
 
 [2]
 The defendants' accused structures held to infringe the reissue claims 9 to 14 inclusive are coupling means in which one member is a flexible coupling member of the type described in the claims but the other is a rigid member of metal or plastic, cup-like in design, with spoke-like radial vanes with which the teeth of the flexible member engage
 
 
 [3]
 If the claims were valid the record amply supports the District Court's findings and conclusions that they are infringed by defendants' accused structures
 
 
 
 26
 SCHNACKENBERG, Circuit Judge (dissenting).
 
 
 27
 With deference to Judge Castle, I find myself in disagreement with the result which he has reached in his opinion. I would affirm the judgment of the district court, for the following reasons, inter alia:
 
 
 28
 Seyfried, by his patent No. 2,755,900 covering flexible coupling means for drivingly connecting the motor shaft and agitator shaft in food mixers, introduced flexible rubber couplers to overcome vibrations and poundings at the bearings. Having claimed only the use of two flexible members together and not specifically claiming, alternatively, the use of a single flexible member with a metal or nonflexible member, Seyfried applied for a reissue patent, which was issued as No. 24,607. The validity of the latter is involved in this case.
 
 
 29
 I agree with the district court that Seyfried's reissue patent covers the same invention described in the original. Although the claims vary, the disclosure does not. The only difference is that while Seyfried originally claimed the use of the flexible member in connection with another like coupler, in the reissue he claims only the flexible member itself. The base invention (the flexible member) was not dependent on the use of two such identical flexible couplers, and, thus, the reissue patent covering the use of only one flexible member covers only matter disclosed in the original patent. Neither by specifications nor disclosures by way of drawings or otherwise are the original and reissue patent other than identical. While the original patent was limited to a coupling comprising a pair of coupling members of flexible construction, and the reissue was limited to a coupling which included one flexible coupling member without specifying the construction of the second member, it is apparent that the latter falls within the former, and so no new matter was introduced by the reissue application. This falls within the purpose of the reissue statute and does not constitute an "addition of new matter." The patentee should not be penalized for claiming too narrowly in the original patent. Moreover, there is no proof of sales of defendants' coupling device before the reissue patent was granted, thus no intervening rights run directly to defendant.
 
 
 30
 I would affirm the judgment of the district court that the reissued patent and the claims therein are valid and infringed by defendants.