**Kurt Ulrich KALKOWSKI, Plaintiff,**

v.

**RONCO, INC., Defendant.**

**No. 71 C 743.**

United States District Court, N. D. Illinois, E. D.

Dec. 3, 1976.

Hume, Clement, Brinks, Willian, Olds & Cook, Ltd., Chicago, Ill., for plaintiff.

Dressler, Goldsmith, Clement & Gordon, Chicago, Ill., for defendant.

## MEMORANDUM

LEIGHTON, District Judge.

This is a patent infringement suit filed pursuant to the patent laws of the United States by Kurt Ulrich Kalkowski against Ronco, Inc. He asserts that jurisdiction is conferred on this court by 28 U.S.C. § 1338(a); and that under 28 U.S.C. § 1400(b), venue over the controversy lies in this district. In a one-count complaint, Kalkowski alleges ownership of United States Patent No. 3,452,895 and its infringement by Ronco through the making, using and selling of the device embodied in the patent. Ronco, in an answer which has been amended, concedes jurisdiction, admits venue, denies the allegations of infringement, and asserts that the patent issued to Kalkowski is not valid. And in two counterclaims, it seeks a judgment declaring the patent invalid, that there has been no infringement, that Kalkowski wrongfully used the number of his patent and thus engaged in false marking of his commercial product.

Trial by jury has been waived and evidence has been heard by the court. It consists of Kalkowski's testimony, that of three witnesses for Ronco, designations of excerpts from depositions, and 129 exhibits offered by and received from both sides. In addition, the parties have stipulated to certain uncontested facts. They agree that the principal issue to be resolved is whether United States Patent No. 3,452,895 is valid. They also agree that a subsidiary issue is whether Kalkowski has wrongfully used the number of his patent and thus engaged in false marking of his commercial product. The issues arise from the following facts.

I

Kurt Ulrich Kalkowski is a German citizen who lives near Cologne in West Germany. Since July 1, 1969 when it was issued, he has been the owner of United States Patent No. 3,452,895. Defendant-Counterclaimant Ronco, Inc. is a corporation organized under the laws of Illinois where it has an established place of business within the jurisdiction of this court.

In 1966, some time during the Christmas season, Kalkowski's wife was injured in her kitchen by hot grease that splattered from a frying pan and damaged the retina of her right eye. This unfortunate incident led Kalkowski to become interested in the problems presented by the splattering of hot grease from frying pans and like kitchen utensils. As a result, he began studying the phenomenon in order to find a solution. At the time, he did not know there were utensils which had been developed to deal with the mundane difficulties to which his attention had been attracted. At first, he thought that a solid lid, one that could be placed over the utensil was the solution. His wife, however, pointed out that a solid lid would cause steaming and prevent frying. Further, she told Kalkowski that a lid would prevent one using the utensil from seeing the food being prepared. For these reasons, Kalkowski concluded that his initial, but simple, suggestion was not the answer.

Consequently, he embarked on an intensive study of the causes and nature of hot grease splattering from frying pans and like kitchen utensils. In the process, he learned that there were several patented products developed by others who had been attracted to the same problem. These products and their patents disclose that the phenomenon of hot splattering grease had preoccupied a long list of inventors. For example, on June 7, 1933, Esten U. Roland of Shiloh, Ohio, applied for a patent on an invention he described as a frying pan cover, "cheap to manufacture * * *" because he said that "meat cooked in an open pan will spatter grease over the stove and upon the cook." He was successful. United States Patent No. 2,002,237 was issued to him on May 21, 1935.

On February 21, 1950, Vern R. Drum of Detroit, Michigan, obtained Patent No. 2,498,534 for an invention he called "a spatter shield to be used in connection with frying pans or similar cooking utensils." His description of the invention disclosed three basic elements: "an outer ring, a handle portion, and an inner shield [which could be made] from wire mesh * * *." Drum specified that the central wire mesh shield portion of his invention was to be made slightly arcuate; that is, it was to have a domed or bowed formation by which it presented a concave surface to the interior of the utensil when the lid is placed in position. This contrasted with a planar or level surface for utensils of this kind.

John B. Smith of Oakland, California in 1953 obtained United States Patent No. 2,636,636 and Aniela Drakoff of Hartford, Connecticut in 1955 obtained Patent No. 2,802,513, both recognizing an equivalency in generally planar or level and arcuate or domed shaped anti-spattering devices designed to cover frying pans and like cooking utensils. Drakoff's patent, and No. 2,760,762 issued to Richard B. Cronheim of St. Louis, Missouri on August 8, 1956, teach that one of the functions of a generally flat anti-splattering utensil is its use as a device with cooking vessels of various diameters and sizes. Drakoff's description of her 1955 invention, and the drawings she furnished the patent office, show that the use of a generally flat mesh in an anti-splattering device was an equivalent and alternative configuration to the somewhat domed shaped mesh she proposed.

From their respective patents, it appears that Smith, Cronheim and Drakoff all claimed that they had invented an anti-splashing device, one which they said could intercept droplets of grease from hot frying pans while permitting steam to escape in

the process of cooking food. Collectively, these patents speak of the advantages of heat reflection from cooking utensils and the utility of an anti-splattering device that could be used with multiple-size frying pans. Drum and Drakoff both gave specifications of inventions which declared the desirability of using mesh that minimizes the splattering of hot grease from frying pans while allowing steam to escape.

In his patent application, Kalkowski asserted that the object of his invention was " * * * to provide a utensil with which one can prevent the sprays from frying vessels and the undesirable and dangerous consequences resulting therefrom without influencing the actual frying process, * * * " and that "[t]he utensil is to be economical in manufacture and simple in use." With regard to the material out of which the invented utensil was to be made, Kalkowski stated that "[t]he cover plate could actually be any plate which is provided with holes or apertures over substantially all its area. According to a preferred embodiment of the invention, however, the cover plate consists of a wire mesh which is fixed to a rigid frame." His invention, according to Kalkowski, was a kitchen utensil that could " * * * be placed over the top of a heating vessel such as a frying pan, cooking pot, casserole or the like which contains water from the food cooked therein * * * ." On July 1, 1969, Patent No. 3,452,895 was issued to him; and the references made by the Patent Office were to the patents issued to Roland, Drum and Drakoff, and Patent No. 2,384,452, issued to George P. Christopher of Seattle, Washington on May 9, 1954. Claim 1 of Kalkowski's patent described a device which incorporated three basic elements: a mesh, a frame, and a handle.

Before the patent issued, in fact, late in 1967, Kalkowski began selling a utensil manufactured along the lines described in the patent application. He had succeeded in obtaining two utensil manufacturing companies to make and supply him with a quantity that enabled him to display his invention and attract attention to its features. During the same week he obtained the patent, and through a West German representative, Kalkowski entered into negotiations with a Chicago-based company, Business Builders International, Inc., and ultimately signed an agreement by which it was given exclusive rights to represent him in the distribution of his invention in all parts of the world, except Europe. This arrangement was successful. BBI, as the company came to be known to Kalkowski, marketed the utensil, packaged it for American consumption, advertised it in television commercials, gave it the name "Handi-Screen," and described it as a splatter shield that " * * * protects against burning from splattering fat, and keeps stove, kitchen walls and floors free of messy grease by trapping spatterings while allowing steam to escape." In the period between the exclusive arrangement and the trial of this case, BBI sold approximately 2,700,000 Handi-Screens for an approximate dollar volume of $9,000,000.

During the month of June 1970, Ronco became interested in manufacturing an anti-splattering device. In fact, it wanted to copy Kalkowski's Handi-Screen in the form it was being distributed by BBI in the United States. Through one of its executives, Ronco consulted two firms of patent attorneys, one composed of the lawyers who represent it in these proceedings. Either at Ronco's suggestion, or that of someone in the law firm, a Handi-Screen was purchased and examined by the attorneys. One firm, the lawyers that now represent Ronco, concluded and advised it that Kalkowski's patent did not "cover the Handi-Screen product as presently manufactured and that you are free to copy it if you wish to do so." The attorneys gave as their reason the fact that, in their considered judgment, the product and the claims of Kalkowski's patent did not conform.

The other firm reached the same conclusion and gave Ronco the same advice. They expanded their reasoning to include the fact that when Kalkowski applied for his

patent, he filed nine claims which the Patent Office rejected because the invention he defined was old and was anticipated by inventions which had been patented before his application. The attorneys told Ronco that Kalkowski, "[s]eeking to differentiate his invention from the prior art references, * * * cancelled his first nine claims and submitted a new set of four (4) claims. After a telephone conference with [Kalkowski's] attorney, the Patent Office allowed or permitted issuance of two (2) of the final four (4) claims. The remaining two (2) claims were cancelled. Thus, Claims 1 and 2 of Patent No. 3,452,895 define a supposed invention distinct from the devices shown in each of the reference patents."

These opinions gave Ronco the advice of two patent firms both telling it that Kalkowski's Handi-Screen was not covered by his patent and that the patent was invalid. Ronco went ahead with its plans to market a splatter shield. It copied Kalkowski's product, packaged it as BBI had done, used the same television commercials, named its product "Splatter Screen," obtained a trademark for the name, and sold the item for the same price. Through it all, Ronco asserted that its product "protects, traps spatters, allows steam to escape, guards against burns, keeps stove, walls, floor free of greasy mess." The sales were successful. For the calendar year ending December 31, 1970, the public purchased 190,390 units of Ronco's utensil, paying a total dollar value of $425,523. In the following year, 1,794,-895 units were purchased, with the public paying Ronco a total of $3,017,786.

Then, on October 21, 1970, Kalkowski's lawyers in Chicago notified Ronco that the marketing of its splatter shield infringed their client's United States Patent No. 3,452,895. They demanded assurance that the infringement would cease. The demand was not met; instead, meetings were held at which Ronco was represented by the patent attorneys who had first advised that the Handi-Screen marketed by BBI could be copied. In the meantime, Kalkowski, in West Germany, was kept informed about these meetings. On December 2, 1970, Ronco's attorneys told Kalkowski's Chicago lawyers that after considering their demand, they were persisting in their conclusion that Ronco's Splatter Screen did not infringe Kalkowski's patent because his product did not conform to the claims that resulted from its prosecution in the United States Patent Office. A short time later Ronco, sought and obtained the advice of a third firm of patent attorneys. These lawyers, on December 7, 1970, gave an opinion that concurred with that which the company had received earlier. Kalkowski's claims of infringement were rejected. The suit in this case was filed on March 21, 1971.

Ronco answered and put in issue Kalkowski's allegations of validity and infringement. In the same pleading, it filed a counterclaim later twice amended; and still later, an amended second and third counterclaim. In the first, Ronco prayed for a declaratory judgment that Kalkowski had misused his patent by encouraging and participating in an effort to benefit from the sale of a product in a package bearing his patent number, knowing or having reason to know or believe that the product was not covered by U.S. Patent No. 3,452,895, all for the purpose of injuring Ronco in its business and engaging in unfair competition. Ronco asked for a judgment declaring that the patent in question was invalid, void, not infringed by Ronco, and had been misused by Kalkowski.

In the third counterclaim, Ronco alleged unfair competition by Kalkowski when he informed his and Ronco's potential customers that United States Patent No. 3,452,895 covered the product he had been selling, when he knew that the patent did not. In its second counterclaim, Ronco alleged that Kalkowski had engaged in unlawful acts with the purpose and intent of injuring it in its property and business, all such acts constituting unfair competition. Finally, in its third counterclaim, Ronco alleged that Kalkowski had collaborated with others in the promotion, advertising and sale of the package containing a product known as Handi-

Screen, with his patent number marked thereon, knowing or having reason to know that the patent did not cover the product packaged and being sold, all in deliberate violation of 35 U.S.C. § 292(a) which provides that "[w]hoever, marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word 'patent' or any word or number importing that the same is patented, for the purpose of deceiving the public * * * [s]hall be fined not more than $500 for every such offense."

Kalkowski replied and put in issue the affirmative allegations of the counterclaims. Later, in accordance with 35 U.S.C. § 282(4),[1] Ronco served notice that in support of its invalidity, non-infringement defense, it was relying on a list of prior art materials that included the four patents to which the Patent Office referred when it issued Kalkowski's patent, and in addition six others. One of these was United States Patent No. 3,301,404 issued to H. E. Becker of Los Angeles, California on January 31, 1967; another was the December 19, 1967 patent No. 3,358,872 to Frank Johnson of Freehold, New Jersey. Becker's invention, as described by him, was a strainer. In drawings he submitted to the Patent Office, he disclosed its configuration as shown in Figure 1.

Figure 1

---

1. In the last paragraph of this section, it is provided that "[i]n actions involving the validity or infringement of a patent the party asserting invalidity or noninfringement shall give notice in the pleadings or otherwise in writing to the adverse party at least thirty days before trial, of the country, number, date, and name of the patentee of any patent, the title, date, and page numbers of any publication to be relied upon as anticipation of the patent in suit or, except in actions in the United States Court of Claims, as showing the state of the art, and the name and address of any person who may be relied upon as the prior inventor or as having prior knowledge of or as having previously used or offered for sale the invention of the patent in suit."

The configuration of Kalkowski's invention was disclosed by him in a drawing as shown in Figure 2.[2]

Figure 2

## II

From the body of prior art on which it relies, but pointing particularly to specific patents and comparing them with Kalkowski's, Ronco contends that the patent in question is invalid because Kalkowski's claimed invention was a combination of old elements, all of them known before he perfected his product. Ronco points out that Kalkowski's utensil consisted of three elements: a mesh, a frame, and a handle. These elements, Ronco insists, could all be found in the embodiments of earlier patents. For example, Drum's No. 2,498,534, one of those referred to by the Patent Office when it issued Kalkowski's, disclosed the same three elements. Ronco argues that Kalkowski's claim of an invention utilizing a planar configuration is refuted by the prior art of Drum, Drakoff and Cronheim which disclosed that generally planar anti-spattering devices were known; and

that such configurations were considered by these prior inventors as an interchangeable alternative to those that were arcuate or domed. Ronco points to the patent issued to Smith, No. 2,636,636; to Drakoff, No. 2,820,513, to Cronheim, No. 2,760,762 and argues that collectively they recognized an equivalency between generally planar or flat and arcuate and domed anti-spattering covers which could be used with multiple-size frying pans. Becker's No. 3,301,404, Ronco argues, disclosed the same elements contained in Kalkowski's utensil: a mesh, a frame, and a handle.

Kalkowski, however, contends that his invention was not anticipated by the prior art. He insists that Becker's invention was a strainer. He argues that the strainer and anti-spattering arts are non-analogous and unrelated. Therefore, he concludes that any reference to strainers or the use of a strainer patent to find his patent invalid is without justification. These competing

2. Ronco's Splatter Screen, since it was copied from Kalkowski's product, had the same configuration as shown in the patent application drawing. The jacket in which it was sold contained the same representations BBI had made concerning Kalkowski's Handi-Screen. Prospective purchasers were told that the product could be used as a protective spattershield, as a steamer, a strainer and a spatula.

contentions and arguments raise issues that are readily resolved by principles well-established in the law of patents.

## III

The grant of a patent by the United States is the exercise of a federal power stemming " * * * from a specific constitutional provision which authorizes the Congress 'To promote the Progress of * * useful Art by securing for limited Time to Inventors the exclusive Right to their * * Discoveries'." U.S. Const. art. I, § 8, cl. 8; DeWolf, An Outline of Copyright Law 15 (Boston, 1925). Before this power can be exercised, there must be invention; that is, a manifestation " * * * of the inventive faculty * * * an absolute prerequisite to patentability." *Dann v. Johnson,* 425 U.S. 219, 96 S.Ct. 1393, 47 L.Ed.2d 692 (1976); *Hotchkiss v. Greenwood,* 11 How. (52 U.S.) 248, 13 L.Ed. 683 (1851). Accordingly, it is the law that "[a] patent may not be obtained though the invention is not identically disclosed or described * * * if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made." 35 U.S.C.A. § 103. And as a corollary, federal judges have been admonished that "[t]he function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained, when on the contrary, their effect is to subtract from former resources freely available to skilled artisans. A patent for a combination which only unites old elements with no change in their respective functions * * * obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men." *Great Atlantic & Pacific Tea Co. v. Supermarket Eq. Corp.,* 340 U.S. 147, 152–153, 71 S.Ct. 127, 130, 95 L.Ed. 162 (1950).

In determining the validity of a patent, the scope and extent of the prior art is important. *Sakraida v. Ag Pro, Inc.,* 425 U.S. 273, 96 S.Ct. 1532, 47 L.Ed.2d 784 (1976). When the prior art discloses the same functional relationship described in a patent application, " * * * it does not rise to the dignity of invention to teach optimization of the functions by making quantitative adjustments to achieve the most desirable or effective result, there being involved in such process no discovery but only the exercise of prudence and skill." *A. R. Inc. v. Electro-Voice Incorporated,* 311 F.2d 508, 512 (7th Cir. 1962). Because it is invention that is determinative, the amount of time and effort devoted to a development do not contribute to patentability. "[S]low but inevitable progress of industry through trial and error * * * [and] persistent and intelligent search for improvement" are insufficient to support a patent. *Picard v. United Aircraft Corporation,* 128 F.2d 632, 636 (2d Cir. 1942); *T. P. Laboratories, Inc. v. Huge,* 371 F.2d 231 (7th Cir. 1966). Neither is commercial success sufficient. *Speakman Co. v. Water Saver Faucet Co., Inc.,* 497 F.2d 410 (7th Cir. 1974). Secondary considerations such as commercial success may furnish indicia of obviousness or nonobviousness. *Graham v. John Deere Company of Kansas City,* 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). But such matters without invention will not make patentability. *Anderson's Blackrock, Inc. v. Pavement Salvage Co., Inc.,* 396 U.S. 57, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969); *Panduit Corporation v. Burndy Corp.,* 517 F.2d 535 (7th Cir. 1975).

For these reasons, the court has examined the prior art materials and concludes that the strainer art represented by the Becker patent is analogous to the anti-splatter art represented by the one issued to Kalkowski. Compare *Mandel Bros. v. Wallace,* 335 U.S. 291, 69 S.Ct. 73, 93 L.Ed. 12 (1948); *Sanford Research Company v. Eberhardt Faber Pen & Pencil Co.,* 379 F.2d 512 (7th Cir. 1967); *B & M Corp. v. Koolvent Aluminum Awning Corporation of Indiana,* 257 F.2d 264 (7th Cir. 1958). It is evident from the embodiment of the Becker invention, as shown by his claim and his draw-

ings[3] that when Kalkowski developed his product he merely combined the elements of Becker's strainer: a mesh, a frame, a handle and proposed their use as a splatter shield. "He who is merely the first to utilize the existing fund of public knowledge for new and obvious purposes must be satisfied with whatever fame, personal satisfaction or commercial success he may be able to achieve. Patent monopolies with all their significant economic and social consequences, are not reserved for those who contribute so insubstantially to that fund of public knowledge." *Dow Chemical Co. v. Halliburton Oil Well Cem. Co.*, 324 U.S. 320, 65 S.Ct. 647, 89 L.Ed. 973 (1945). It is not unusual for a separate technical discipline in one field of art to find application in another. One court has observed that " * * * the word 'art' includes not only the knowledge accumulated with respect to a problem of particular industry but that accumulated in those scientific fields the techniques of which have been commonly employed to solve problems of a similar kind in particular and closely related fields." *Geo. J. Meyer Mfg. Co. v. San Marino Electronic Corp.*, 422 F.2d 1285, 1288 (9th Cir. 1970).

■ In this case it appears that when Becker invented his strainer he adopted a configuration and combined elements that made his utensil " * * * especially applicable for use in conjunction with open flat topped vessels * * * [such as] pots, pans and the like." Apparently, he did not detect the fact that his strainer had other uses. Kalkowski, however, with the same elements, perceived the undetected qualities in Becker's configuration. But it is not inventive or patentable to perceive that a product discovered by another has qualities that the other has failed to detect. *General Electric Co. v. Jewel Incandescent Lamp Co.*, 326 U.S. 242, 66 S.Ct. 81, 90 L.Ed. 43 (1945). It is certainly not invention to discover that a strainer identical to the one invented by Becker could also be used as a spatula, a steamer, or as an anti-splashing device. *Cuno Engineering Corp. v. Automative Devices Corp.*, 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed.2d 58; *Research Corporation v. Nasco Industries, Inc.*, 501 F.2d 358 (7th Cir. 1974); *William T. Alvarado Sales Co. v. Rubaloff*, 263 F.2d 926 (9th Cir. 1959). These rules have particular application where, as does Kalkowski in this case, an inventor claims for his product a use proposed in a prior invention. Kalkowski noticed and in fact advertised that his anti-splatter screen could be used as a strainer. Becker had proposed an identical use for what he had created.

■ To support the validity of his patent, Kalkowski relies on the principle that every patent carries with it a presumption that it is valid. *Dunlop Co. Ltd. v. Kelsey Hayes Co.*, 484 F.2d 407 (6th Cir. 1973); *Maxon Premix Berner Co., Inc. v. Eclipse Fuel Engineering Co.*, 471 F.2d 308 (7th Cir. 1972); 35 U.S.C. § 282. This presumption, however, is rebutted when it is shown that there existed prior art which the Patent Office did not consider. This is particularly true when the prior art is more pertinent to the subject invention than that referred to by the Patent Office. The Becker patent was not referred to when Kalkowski's was prosecuted and processed; and in the judgment of this court, it was more pertinent to the subject invention. Therefore, the presumption of validity on which Kalkowski relies has been rebutted. *Henry Manufacturing Co. v. Commercial Filters Corp.*, 489 F.2d 1008 (7th Cir. 1972); *Simmons Company v. Hill-Rom Company*, 352 F.2d 886 (7th Cir. 1965).

■ Moreover, when the prior art is examined, and properly given its relevant consideration, it becomes clear that the subject matter of Claim 1 in Kalkowski's patent would have been obvious to one of ordinary skill in the art. See *Graham v. John Deere Company of Kansas City*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). It is equally clear that the invention described by Kalkowski in his patent applica-

---

**3.** In the law of patents, the claims not the drawings define the invention. *Binks Mfg. Co. v. Ransburg Electro-Coating Corp.*, 281 F.2d 252 (7th Cir. 1960). However, a claim is construed by reference to its specifications and drawings in an effort to ascertain the real invention. *Banning v. Southwestern Bell Telephone Co.*, 384 F.Supp. 831 (D.C.Tex.1974).

tion was anticipated by Becker in the patent issued to him on January 31, 1967. Compare *Knapp v. Morss,* 150 U.S. 221, 14 S.Ct. 81, 37 L.Ed. 1059 (1893); see *Allbright-Nell Co. v. Auto Steam Process Co.,* 70 F.2d 959 (7th Cir. 1934). Accordingly, Ronco has sustained its burden of establishing that Kalkowski's patent is invalid and that his product, the Handi-Screen, was unpatentable. An unpatentable article, like one on which the patent has expired, is in the public domain; and under federal patent laws, it may be made and sold by whoever chooses to do so. *Sears, Roebuck and Co. v. Stiffel Co.,* 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964). This being the case, Ronco had the right, under the law, to copy every detail of Kalkowski's Handi-Screen. *Compo Corp. v. Day-Brite Lighting,* 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed. 669 (1964). Its marketing of the Splatter Screen did not infringe Kalkowski's patent because an invalid patent cannot be infringed. *Scovill Manufacturing Company v. Goldblatt Brothers, Inc.,* 362 F.2d 777 (7th Cir. 1966); *Bendix Corporation v. Balax, Inc.,* 421 F.2d 809 (7th Cir. 1970). Therefore, Kalkowski cannot recover judgment on the claim alleged in his complaint.

IV

With regard to the three counterclaims, Ronco, the counterclaimant, had the burden of establishing against Kalkowski all of the causes of action it had alleged. *Glassman Construction Co., Inc. v. Maryland City Plaza, Inc.,* 371 F.Supp. 1154 (D.C. Md.1974). It is generally said that the burden of proof, in its primary sense, rests on the party who, as determined by the pleadings, asserts the affirmative of an issue; and it remains there until termination of the action. *Pacific Portland Cement Co. v. Food Mach. & Chem. Corp.,* 178 F.2d 541, 547 (9th Cir. 1949); *Koehler v. Marcona Mining Company,* 391 F.Supp. 1158 (D.C. Cal.1973). Ronco, however, has not discharged this burden of proof.

There is no evidence that would sustain a declaratory judgment determining Kalkowski has misused his patent or that he engaged in unfair competition with Ronco by mismarking the package in which his Handi-Screen had been sold. The statute on which Ronco relies is penal in nature; one that is strictly construed. *Ansul Co. v. Uniroyal Inc.,* 306 F.Supp. 541 (D.C.N.Y. 1969). To make out a claim for relief under its unfair competition counterclaim, Ronco had to prove that Kalkowski acted with intent to deceive the public. *Brose v. Sears, Roebuck and Company,* 455 F.2d 763 (5th Cir. 1972). This it did not do. Consequently, this fact and the failure to prove patent misuse are fatal to its actions under the first two counterclaims. *G. LeBlanc Corporation v. H. & A. Selmer, Inc.,* 310 F.2d 449 (7th Cir. 1962).

Similarly, the evidence does not sustain Ronco's burden of proof on its third counterclaim alleging that Kalkowski engaged in the promotion, advertisement and sale of a package containing his Handi-Screen with intent to violate the provisions of 35 U.S.C. § 292(a). The purpose of this section is to protect a patentee against fraudulent use of his name or device and prevent public deception by advertisements which claim that an application for a patent has been made when this is not true; or if made, it is not pending. *Lase Co. v. Wein Products, Inc.,* 357 F.Supp. 210 (D.C.Ill. 1973). None of these facts have been proved. Therefore, judgment must be entered in Kalkowski's favor in all of Ronco's counterclaims.

V

The remaining issue is whether costs and attorneys fees should be awarded in this case. Ronco raises this issue by a motion in which it asks this court, pursuant to Rule 2 of the local rules of this district, to increase the security for costs that Kalkowski has filed with the clerk of the court. As reasons for its motion, Ronco states that Kalkowski is a foreigner and that the security he has given is a $250 cost bond, the minimum required. Ronco asks that additional security be posted to cover costs in the amount of $5000 and potential attorneys fees which may total $50,000. It has filed a memorandum in support of the motion. Kalkowski has filed one in opposition arguing that under the circumstances of this

case neither costs nor attorneys fees should be awarded.

 It is provided in Rule 54(d), Federal Rules of Civil Procedure, that "[e]xcept when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs * * *." In an equity proceeding like this one, the award of costs is within the court's discretion; it is not obligatory under this rule or under any statute. *B. B. Chemical Co. v. Cataract Chemical Co.*, 2 F.R.D. 159 (D.C.N.Y.1941). And it is generally said that in such cases the usual practice is not to allow costs to either party where both have prevailed in part in the lower court. See *Brunswick-Balke-Collender Co. v. American Bowling & Billiard Corp.*, 150 F.2d 69 (2d Cir. 1945). Where in a patent case there are claims and counterclaims with the case being a close and difficult one, it is not an abuse of discretion for the trial judge to require each party to pay its own costs. *United States Plywood Corp. v. General Plywood Corp.*, 370 F.2d 500 (6th Cir. 1966); compare *Popeil Brothers, Inc. v. Schick Electric, Inc.*, 65 F.R.D. 127 (N.D.Ill.1974).

 This litigation has been well fought. Ronco has prevailed on the alleged claim; Kalkowski on the counterclaims. Without detailing them because they appear in the record, there are equitable considerations which influence this court's judgment. Furthermore, attorneys fees should not be awarded in a patent infringement suit except to prevent gross injustice, or where fraud and wrongdoing are clearly proved. *Sarkes Tarzian, Inc. v. Philco Corporation*, 351 F.2d 557 (7th Cir. 1965); *Dole Valve Co. v. Perfection Bar Equipment Co.*, 458 F.2d 1200 (7th Cir. 1972). Nothing of this kind is shown by the evidence. Therefore, costs and attorneys fees will not be awarded. An appropriate judgment order, in form and substance consistent with this memorandum, may be presented to the court for approval and entry.

So ordered.