**TRADING TECHNOLOGIES INTERNATIONAL, INC., Plaintiff,**

v.

**ESPEED, INC., Espeed International, Ltd., Ecco LLC, and EccoWare, Ltd., Defendants.**

No. 04 C 5312.

United States District Court, N.D. Illinois, Eastern Division.

Oct. 29, 2010.

Paul A. Kafadar, McDonnell Boehnen Hulbert & Berghoff, Paul H. Berghoff, Christopher Michael Cavan, George I. Lee, Jennifer M. Kurcz, Jeremy E. Noe, Marcus Jay Thymian, Matthew J. Sampson, Paul S. Tully, McDonnell, Boehnen, Hulbert & Berghoff, Ltd., Alan Wayne Krantz, Kirsten L. Thomson, Leif R. Sigmond, Jr., Michael D. Clifford, Michael David Gannon, Michelle Lynn McMullen-Tack, Rebecca L. Brown, S. Richard Carden, McDonnell Boehnen Hulbert & Berghoff LLP, Steven F. Borsand, Trading Technologies International, Inc., Chicago, IL, for Plaintiff.

Elizabeth Hartford Erickson, Imron T. Aly, Ivan Michael Poullaos, James M. Hilmert, James Ethan McComb, Kevin Anthony Banasik, Tracy J. Allen, Winston & Strawn LLP, Chicago, IL, for Defendants.

### MEMORANDUM OPINION AND ORDER

SIDNEY I. SCHENKIER, United States Magistrate Judge

eSpeed, Inc., eSpeed International, Ltd., Ecco LLC, and EccoWare Ltd. (collectively "eSpeed") seek to strike a bill of costs filed by Trading Technologies, Inc. ("TT") or, in the alternative, to stay consideration of costs pending eSpeed's appeal. After a jury awarded TT damages for eSpeed's patent infringement, and the trial judge (then Judge Moran) entered a permanent injunction against eSpeed, TT submitted a bill of costs (doc. # 1272, 1283) seeking $3,321,775.58. eSpeed objects to TT's bill of costs (doc. # 1288), contending that TT cannot recover costs because TT is not the prevailing party and, even if TT were the prevailing party, this Court should exercise its discretion to deny costs or, in the alternative, to stay costs pending appeal (Def.'s Obj. at 1). In response (doc. # 1297), TT removed certain challenged costs and reduced its request to $2,887,117.56 (Pl.'s Resp. at 1). Thereafter, eSpeed filed a reply (doc. # 1304), arguing that TT should be awarded no more than $147,190.45 in costs, assuming TT is a prevailing party entitled to costs at all (Def.'s Reply at 1). At the Court's invitation, and with eSpeed's agreement, TT later supplemented its submission with invoices and witness depositions that were previously made available to Judge Moran.

After careful consideration of the arguments presented and the documentation submitted, this Court rules as follows: (1) we deny eSpeed's motion to strike, (2) we deny eSpeed's motion to stay, and (3) we grant in part and deny in part TT's bill of costs, and award $381,831.04 in costs to TT.

### I.

We begin by summarizing the issues and decisions in this case, before addressing eSpeed's threshold argument that TT is not a "prevailing party" entitled to costs under Federal Rule of Civil Procedure 54(d).

### A.

On August 12, 2004, TT filed a complaint against eSpeed (doc. # 1) alleging direct, indirect, and contributory infringement of TT's patents, U.S. Patent No. 6,766,304 ('304) and U.S. Patent No. 6,772,132 ('132). TT requested relief in the form of a judgment of infringement, a preliminary and permanent injunction, damages, treble damages for willful infringement, and an assessment of costs and reasonable attor-

ney's fees (Pl.'s Compl. at 4). The accused products included several versions of eSpeed's "Dual Dynamic," "eSpeedometer," "Modified eSpeedometer," "eSpeed Futures View," "Ecco Price Ladder," and "eSpeed AutoSpeed Basis." All of those products relate to electronic trading in futures. eSpeed filed an answer (doc. # 133) denying infringement and asserting the invalidity and unenforceability of the '304 and '132 patents (Def.'s Ans. at 10). eSpeed also filed a counterclaim seeking declarations of non-infringement, invalidity, and unenforceability of TT's patents, as well as an award of costs and reasonable attorney's fees (Def.'s Ans. 12–18).

After various proceedings, some—but not all—of eSpeed's accused product types were found to infringe TT's patents. On February 9, 2005, the Court denied TT's motion for a preliminary injunction (doc. # 83). On October 31, 2007, after a three-day *Markman* hearing, the Court construed the claims in dispute (doc. # 425) and then substantially reaffirmed its construction in a clarification order dated February 21, 2007 (doc. # 475). On June 20, 2007, the Court found that various versions of eSpeed's "Dual Dynamic," "eSpeedometer," and "Modified eSpeedometer" did not literally infringe TT's patents, and in addition, precluded TT from asserting infringement under the doctrine of equivalents (doc. # 708). On October 10, 2007, after a four-week trial, a jury ruled in favor of TT (doc. # 1061), finding that TT's '304 and '132 patents were valid and infringed by eSpeed using "eSpeed Futures View," "Ecco Price Ladder," and "eSpeed AutoSpeed Basis" (collectively, the "infringing products"). The jury also determined that the priority date for the patents was March 2, 2000, the date on which TT's provisional application was filed, and found eSpeed's infringement to be willful. The jury awarded TT $3.5 million in compensatory damages. The Court subsequently vacated the jury's finding of

willfulness (doc. # 1144), and reduced the damage award by remittitur to $2,539,468.00 (doc. # 1153)—a number that plaintiff accepted (doc. # 1325). The Court withheld the issue of inequitable conduct from the jury (doc. # 840) and, after a two-day hearing, the Court rejected eSpeed's argument that the patents-in-suit were unenforceable for inequitable conduct (doc. # 1215). On May 22, 2008, the Court granted TT's motion for a permanent injunction against eSpeed's infringing products (doc. # 1232).

The case then proceeded to appeal. After first rejecting eSpeed's contention that there was no final judgment to appeal, the Federal Circuit considered the merits of the parties' cross appeals. On February 25, 2010, the Federal Circuit affirmed. *Trading Tech. Int'l, Inc. v. eSpeed, Inc.,* 595 F.3d 1340 (Fed.Cir.2010).

### B.

eSpeed argues that TT should not be considered the prevailing party because the Court granted eSpeed's motion for partial summary judgment with respect to the non-infringing products (Def.'s Obj. at 2). eSpeed contends that, because granting this motion "essentially disallowed the bulk of damages that TT would have sought at trial," TT's case is analogous to others where courts have required both parties to bear their own costs because the litigation resulted in a "tie" (*Id.* at 2–3). In response, TT argues that it is clearly the prevailing party because the jury awarded TT damages for infringement and the Court entered a permanent injunction against eSpeed (Pl.'s Resp. at 2–3). TT also argues that the Court's finding of non-infringement for some products and reversal of the jury's finding of willfulness does not preclude TT from being the prevailing party (*Id.* at 3).

Rule 54(d)(1) provides that, "[u]nless a federal statute, these rules, or a

court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." In patent cases, Federal Circuit law governs whether a party may be considered the prevailing party. *See Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 76 F.3d 1178, 1181–1182 (Fed.Cir.1996). In the context of patent litigation, a plaintiff "prevails" when "the actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Id.* (quoting *Farrar v. Hobby*, 506 U.S. 103, 111–113, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992)). Whether or not a party prevailed, however, is only a threshold inquiry. *Id.* at 1182. Once a court finds a prevailing party, the court retains broad discretion as to what costs to award, if any. *Farrar*, 506 U.S. at 115–116, 113 S.Ct. 566; *Barber v. Ruth*, 7 F.3d 636, 644 (7th Cir.1993). Because the decision of whether to award costs to a prevailing party "implicates considerations not unique to patent law," it is governed by the law of regional circuits. *Manildra*, 76 F.3d at 1183. In the Seventh Circuit, there is a presumption in favor of awarding costs to the prevailing party which is "difficult to overcome." *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 945 (7th Cir.1997). Generally, only two reasons warrant the denial of costs: (1) misconduct by the prevailing party worthy of a penalty, or (2) the losing party's inability to pay. *Id.*

The Supreme Court has held that a judgment for damages in any amount modifies the defendant's behavior for the plaintiff's benefit, thus signifying the plaintiff as the prevailing party. *Farrar*, 506 U.S. at 113, 113 S.Ct. 566 (holding that even a plaintiff who wins nominal damages is considered the prevailing party). Here, TT achieved a damage award (after remittitur) of more than $2.5 million. As TT points out, the jury answered each subpart of every special verdict question in TT's favor (*See* Pl.'s Resp. at 1; Jury Verdict (doc. # 1061)). The Court then issued a permanent injunction against eSpeed's infringing products. Under *Farrar's* holding, TT is the prevailing party based on its damage award alone. *See* 506 U.S. at 113, 113 S.Ct. 566. However, there can also be no serious dispute that TT's injunctive relief modified eSpeed's behavior in a way that benefitted TT. The fact that eSpeed had previously discontinued some of the infringing products is immaterial. As a result of TT's injunction, eSpeed is now restricted from choosing to produce or sell any of the infringing products in the future, which bestows a considerable benefit on competitor TT. Thus, TT's injunctive relief forms a second, independent basis upon which to conclude that TT is the prevailing party. *See Young v. City of Chicago*, 202 F.3d 1000 (7th Cir.2000) (holding that demonstrators who obtained an injunction against the City's exclusion of protestors during the Democratic national convention were prevailing parties entitled to attorney's fees).

To support its proposition that TT is not the prevailing party, eSpeed cites three cases where neither party prevailed on all issues and each was required to bear its own costs: *Senior Technologies, Inc. v. R.F. Technologies, Inc.*, 190 F.R.D. 642 (D.Neb.2000); *Compro–Frink Co. v. Valk Mfg. Co.*, 595 F.Supp. 302, 304 (E.D.Pa. 1982); and *Kalkowski v. Ronco, Inc.*, 424 F.Supp. 343, 353 (N.D.Ill.1976) (Def.'s Obj. at 3). To the extent that these cases engage in a prevailing party analysis that departs from controlling Federal Circuit law, we are not at liberty to accept their approach. But, we are not convinced that these cases are inconsistent with Federal Circuit law. because we find them factually distinguishable from our case in significant ways. In *Senior Technologies* and *Compro Frink*, the plaintiff and defendant suc-

cessfully defended each other's claims, and neither was awarded damages or injunctive relief. *See Senior Techs.*, 190 F.R.D. at 642 (judgment in favor of defendant on plaintiff's infringement claim, judgment in favor of plaintiff on defendant's invalidity claim); *Compro–Frink*, 595 F.Supp. at 303 (holding that both of plaintiff's patents were valid and enforceable, but defendant did not infringe; thus, "both were prevailing parties to the extent each was defending against the claim of the other"). Likewise, In *Kalkowski*, neither party received damages or injunctive relief, although the defendant in *Kalkowski* obtained a finding of patent invalidity. *See* 424 F.Supp. at 353–54 (holding that defendant had not infringed plaintiff's patent because it was invalid, but rejecting defendant's counterclaims that plaintiff engaged in unfair competition and wrongful use of the patent). In this case, by contrast, TT won both damages and an injunction, after it was determined that TT's patents were valid, enforceable, and infringed.

The fact that eSpeed was able to obtain a ruling that it did not engage in willful infringement, as well as a finding of noninfringement for some products, does not deprive TT of prevailing party status. Federal Circuit case law on this point explicitly states that a party may prevail on some issues, but not others, and still be considered the prevailing party. *See, e.g., Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V.*, 464 F.3d 1339, 1347 (Fed.Cir.2006) (affirming the district court's holding that plaintiff was the prevailing party because plaintiff received a damage award and injunction after prevailing on one of its two infringement claims, as well as defendant's invalidity and unenforceability claims). Accordingly, we find that TT is the prevailing party.

As the prevailing party, TT enjoys the "strong presumption" that it will recover costs. *Weeks*, 126 F.3d at 944–45. eSpeed

has not made the case that either of the limited bases to overcome that strong presumption—misconduct by the prevailing party or inability of the losing party to pay—applies here. We therefore deny eSpeed's motion to strike TT's bill of costs.

## II.

As part of its opposition to TT's bill of costs, eSpeed originally argued that any consideration of costs should be stayed pending the conclusion of eSpeed's appeal in the Federal Circuit. In an order dated February 2, 2009, Judge Moran granted the request to stay "until the resolution of the pending appeal" (doc. # 1305). That appeal now has been decided, and the case has been returned to the district court. We therefore see no basis to continue to defer ruling on the bill of costs.

We recognize that there are currently proceedings in the district court that may lead to a further appeal. In a report and recommendation dated September 8, 2010 (doc. # 1341), this Court recommended that the district judge enter a corrected final judgment order, pursuant to Federal Rule of Civil Procedure 60(a), to reflect the jury verdict and the damages award of $2,539,469.00 (as remitted), *nunc pro tunc* to May 22, 2008. In the same report, the Court recommended that the district judge deny plaintiff's motion for sanctions and for a mandatory injunction to enforce the money judgment. Both sides have objected to this Court's report and recommendation, and those objections are fully briefed and awaiting ruling by the district judge. Perhaps one (or both) parties will appeal from the district judge's decision.

But, that future potentiality does not warrant continuing to defer ruling on a bill of costs that is now well over two years old. Moreover, we take this opportunity to express this Court's view that if there are further appeals, they would not war-

rant any further delay in adjudicating plaintiff's bill of costs. A party dissatisfied with the ruling on the bill of costs may exercise its right to seek review. A further stay of a decision on the bill of costs would only needlessly delay the ultimate disposition of this case that is already more than six years old.

### III.

■■■ eSpeed next argues that this Court should exercise its discretion to deny TT's costs, either in whole or in part. The Court may only award costs that "fall into one of the categories of costs statutorily authorized for reimbursement." *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 427 (7th Cir.2000). Under 28 U.S.C. § 1920, a court may tax the following expenses as costs: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and copies of papers necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses and costs of special interpretative services under 28 U.S.C. § 1828. The award of costs to a prevailing party depends on whether the expenses sought are "reasonable in amount and necessity." *McCabe v. City of Chicago*, 593 F.Supp. 665, 669 (N.D.Ill. 1984). Costs incurred merely for the convenience of the prevailing party may not be recovered. *Barber*, 7 F.3d at 645. The prevailing party has the "burden of demonstrating the amount of its recoverable costs." *Telular Corp. v. Mentor Graphics Corp.*, 2006 WL 1722375, at *1 (N.D.Ill. June 16, 2006).

We emphasize that the burden of proof is not a mere formality. Rather, the burden of proof gives teeth to the requirement that before a prevailing party may require its adversary to pay costs, the prevailing party must prove with evidence and not merely with *ipse dixit* statements—that the costs were actually incurred, were reasonable in amount, and were necessary. Where there is a failure of proof, the party who has failed to carry its burden bears the consequences. Thus, where TT has failed to substantiate that all of the costs it claims within a certain category were necessary and reasonable, we reduce the costs to the level supported by TT's proof—even if that is zero. We see no reason that TT should potentially receive an award of costs greater than is warranted because of its failure to discharge its burden of proof. We take the burden of proof seriously; TT should do so as well.

Applying these standards, we address the following items of costs challenged by defendants: (A) witness fees, (B) fees of the court reporter, (C) printing fees, (D) copying and exemplification fees, (E) interpreter fees, and (F) fees for summons and subpoenas. Following our determination of what costs are recoverable, we will address eSpeed's argument that costs "relating directly" to issues upon which eSpeed prevailed should be subtracted from TT's award (*See* Def.'s Obj. at 15, 22, 23).

### A.

■■■ In the original bill of costs, TT seeks $24,927.27 in travel, attendance, and subsistence costs for witnesses (Bill of Costs at 7). eSpeed argues that many of TT's expenses are not recoverable because TT failed to comply with statutory recovery limits and "failed to provide sufficient documentation" of its expenses (Def.'s Obj. at 4). TT responds by removing certain challenged costs and providing a revised request of $20,720.40, which only addresses subsistence expenses for nights between consecutive days of attendance (Pl.'s Resp. at 4–5). In reply, eSpeed objects to TT's

revised calculations for the following witnesses: (1) Dr. Mark Holder, (2) Dr. David Klausner, (3) Larry Nixon, (4) Dr. Craig Pirrong, (5) Raymond Sims, (6) Chris Thomas, and (7) Stephen Kunin. We address each objection individually, according to the witness it concerns.

### 1.

eSpeed argues that $2,771.10 in travel costs for Dr. Mark Holder's business class flight from Switzerland to Chicago are not recoverable because: (1) Dr. Holder's flight from Switzerland was not the "shortest route" from his Ohio residence, and (2) Dr. Holder's business class ticket was not purchased at the "most economical rate" (Def.'s Obj. at 4–5). In response, TT argues that Dr. Holder had to fly in from Switzerland because, at the time of the trial, he "was attending the annual meeting of the Swiss Futures and Options Association" (Pl.'s Resp. at 5). TT also argues that the cost of Dr. Holder's seat was consistent with comparable coach class flights from Europe (*Id.*).

A party may only recover travel costs "to and from [the] witness's residence" and the place of attendance "by the shortest practical route." 28 U.S.C. 1821(c)(1). Further, the party must demonstrate that the witness "utilize[d] a common carrier at the most economical rate reasonably available," by furnishing a "receipt or other evidence of actual cost." *Id.*

Since Dr. Holder lives in Ohio, his flight from Switzerland to Chicago was clearly not the "shortest practical route" from his residence to the trial. Further, although TT argues that Dr. Holder's business class flight was comparable in price to coach class flights, TT provides no evidence to substantiate that assertion. Consequently, we deny $2,771.10 in costs for Dr. Holder's flight from Switzerland.[1]

In eSpeed's reply, eSpeed also argues that TT cannot recover $125.40 in costs for Dr. Holder's flight on Southwest Airlines because TT has failed to provide a receipt (Def.'s Reply at 5).[2] We note that it is improper to raise arguments for the first time in a reply because this deprives the other party of an opportunity to respond. *Marie O. v. Edgar*, 131 F.3d 610, 614 n. 7 (7th Cir.1997) (matters raised for the first time in a reply are waived). Because eSpeed failed to object to this item of costs in its original submission, eSpeed's objection is waived. Consequently, we award TT the $125.40 in costs associated with Dr. Holder's Southwest flight.

eSpeed objects to TT's request for $711.00 in subsistence costs for Dr. Holder, reflecting three days of attendance at trial using a per diem rate of $237.00 (Def.'s Obj. at 5). eSpeed argues that only $26.20 in costs for Dr. Holder's meals are recoverable because TT has failed to provide documentation for Dr. Holder's other expenses (Def.'s Obj. at 5). eSpeed further argues that, even if TT provided the prop-

---

1. We also are not persuaded that Dr. Holder's transatlantic flight to Chicago was necessary. On June 18, 2007, Judge Moran reset the jury trial date in TT's case from June 28, 2007, to September 10, 2007 (doc. # 704). TT provides no explanation for its failure to schedule around Dr. Holder's commitment abroad, though TT was given nearly three months' notice of the trial. The record shows that Dr. Holder had been previously deposed on July 12, 2007, and his deposition was preserved by video-recording (*See* Bill of Costs Ex. 2).

Even if rescheduling Dr. Holder's testimony had been impossible, TT has provided no explanation for why the video-recording of Dr. Holder's deposition—which was taken at a time when TT knew of the September 2007 trial date—could not have been submitted in lieu of his in-court testimony.

2. TT's invoice does not specify the departure or arrival location for Dr. Holder's Southwest flight (*See* Def.'s Obj., Ex. 3).

er documentation, TT can only recover costs for September 11, 2007—the date of Dr. Holder's testimony (*Id.*). TT responds that it relied on statutory subsistence rates because "Dr. Holder's room, board, and transportation far exceeded the statutory limits" (Pl.'s Resp. at 5).[3] TT argues that Dr. Holder's subsistence expenses are not limited to the day on which he testified, but may be applied to any days he attended trial for "reasons related to his own testimony" (*Id.*). For unexplained reasons, TT appears to have reduced its request for Dr. Holder's subsistence costs to $474.00 (Pl.'s Resp., Ex. A).

Subsistence costs for witnesses are recoverable when "an overnight stay is required at the place of attendance because such place is so far removed from the residence of such witness as to prohibit return thereto from day to day." 28 U.S.C. 1821(d)(1). A subsistence allowance for a witness "shall be paid in an amount not to exceed the maximum per diem allowance" set by the General Services Administration. 28 U.S.C. 1821(d)(2). Thus, "the amount taxable is the amount actually paid or the statutorily defined amount, whichever is less." *Independence Tube Corp. v. Copperweld Corp.*, 543 F.Supp. 706, 721 (N.D.Ill.1982). At the time of the trial, the maximum per diem allowance was $237.00.[4] Witnesses are also entitled to a $40,00 per day attendance fee. 28. U.S.C. 1821(b).

TT has failed to support its request for Dr. Holder's subsistence costs with any documentation of his actual expenses. As a result, TT has failed to provide a proper basis for the Court to ascertain whether TT is entitled to recover the maximum

statutory rate for Dr. Holder's attendance. Consequently, we deny $447.80 in undocumented subsistence costs for Dr. Holder. We award the documented $26,20 for Dr. Holder's meals (*see* Def.'s Obj. Ex. 3, Invoice No. 172646) and $120.00 in attendance fees. The total subsistence and attendance award for Dr. Holder is SI46.20.

**2.**

eSpeed likewise objects to Dr. David Klausner's subsistence costs based on a lack of documentation. eSpeed argues that Dr. Klausner's attendance fees and subsistence costs are undocumented because TT only provides two invoices reflecting 23 days of Dr. Klausner's work on the case, rather than any specific documentation of Dr. Klausner's attendance or expenses on the four days of trial for which TT requests costs (9/21/07, 9/24/07, 9/25/07, and 10/1/07) (Def.'s Obj. at 6). eSpeed contends that, as a result, TT can only recover attendance fees for the October 1, 2007 date of Dr. Klausner's testimony and no subsistence fees whatsoever (*Id.*).

Just as with Dr. Holder, TT argues that it used the $237.00 per diem rate for Dr. Klausner's subsistence because his expenses "far exceeded" the statutory maximum (Pl.'s Resp. at 6). TT states that it has reduced its request to include only subsistence costs for the night of September 24, 2007 (*Id.* at 5). Further, TT includes a "revised Exhibit 7" to TT's initial bill of costs in order to "more specifically define" TT's subsistence calculations (*See* Pl.'s Resp., Ex. A). TT's revised exhibit, however, does not show the claimed reduction in TT's subsistence request for Dr.

---

**3.** TT claims to have attached as Exhibit A to its response brief "a sample page from the hotel bill for TT during the trial ... [that] shows the lowest daily rate incurred for witness rooms by TT during the trial was $279/night" (Pl.'s Resp. at 4). However, there is

no such document in TT's Exhibit A, or any other part of TT's submission.

**4.** The maximum per diem rate of $237.00 for Cook and Lake Counties during the fiscal year 2007 can be found at http://www.gsa.gov/portal/category/100120.

Klausner or provide any invoices for Dr. Klausner's expenses (See id.).

The fact that Dr. Klausner's expenses may have exceeded the statutory maximum does not absolve TT of its obligation to provide proper documentation in order to recover. As with Dr. Holder, Dr. Klausner's $711.00 in undocumented subsistence costs are denied. However, we grant the requested $160.00 in attendance fees associated with Dr. Klausner.

TT notes in its response that eSpeed has offered no objection to $3,210,50 in requested costs for Dr. Klausner's travel expenses (Pl.'s Resp. at 6). As a result, we award the $3,210.50 in travel costs. See Weeks, 126 F.3d at 944–45 (the court must award costs to the prevailing party unless the losing party provides a sufficient reason to deny costs).

### 3.

eSpeed raises objections to TT's costs for Larry Nixon's attendance at trial and the inequitable conduct hearing. With respect to the trial, eSpeed objects to $1,380.10 in travel costs for Mr. Nixon, arguing that the corresponding invoices provided by TT were too heavily redacted "to ascertain the nature of his expenses" (Def.'s Obj. at 6). Further, eSpeed argues that Mr. Nixon's attendance during many of the trial dates was unnecessary, as was Mr. Nixon's attendance at the inequitable conduct hearing where he did not testify (Id.). In its response, TT supports Mr. Nixon's travel expenses for both the trial and the hearing with actual receipts (See Pl.'s Resp., Ex. D). TT also provides evidence that Mr. Nixon was anticipated to testify at trial on September 17, 2007 (see Pl.'s Resp., Ex. E), thereby necessitating his presence in Chicago until his actual testimony on September 19, 2007 (See Pl.'s

Resp. at 6). TT notes that Mr. Nixon also attended trial to testify on September 20 and October 2, 2007, and to observe another witness's testimony on October 3, 2007 (Id.). Further, TT argues that Mr. Nixon attended the inequitable conduct hearing because TT expected him to testify, but decided not to offer Mr. Nixon due to time constraints (Id. at 7). In its reply, eSpeed argues that, at most, TT can recover the following costs for Mr. Nixon's attendance at the trial and the hearing: $1,827.90 in travel costs for Mr. Nixon's airfare, $393.00 for cab fare, and $52.00 for parking—totaling $2,271.60 (Def.'s Obj. at 5). With respect to Mr. Nixon's appearance and subsistence costs for both events, eSpeed argues that TT can only recover $320.00 and $1,185.00 respectively (Id.).

TT has offered a legitimate reason for Mr. Nixon's attendance at the inequitable conduct hearing on April 3–4, 2008, which eSpeed has failed to rebut. Because TT has provided the proper documentation for Mr. Nixon's expenses, we award TT's total revised request of $2,568.10 for the trial (which includes $240.00 for attendance, $1,380.10 for travel, and $948.00 for subsistence), and $1,276.90 for the inequitable conduct hearing (which includes $80.00 for attendance, $959.90 for travel, and $237.00 for subsistence).[5]

### 4.

TT originally requested $5,471.00 in costs associated with Dr. Craig Pirrong (Bill of Costs, Ex. 7). In response to eSpeed's objections, TT reduced its request to $3,918.20 by removing travel expenses for Dr. Pirrong's wife and all costs associated with October 4, 2007 (Pl.'s Resp. at 7). TT also reduced Dr. Pirrong's subsistence request from ten to seven nights (Id.). eSpeed argues that $1,009.20 in trav-

---

**5.** The Court notes that TT has withdrawn its request for subsistence and attendance costs related to a duplicate date of 10/2/07, which was erroneously listed in TT's Bill of Costs (See Pl.'s Resp. at 6). The Court has not awarded costs for this date.

el costs for Dr. Pirrong should be denied as improper because it was unnecessary for him to travel back and forth between his Houston home and Chicago three times (Def.'s Reply at 5). According to eSpeed, TT can only recover costs for the seven days of trial when Dr. Pirrong was either testifying, observing eSpeed's expert, Dr. Ferraro, or serving as a potential witness (*Id.* at 6).

TT states that Dr. Pirrong attended trial on September 11–12, 2007, to observe opening arguments in preparation for his own testimony (Pl.'s Resp. at 7). TT has also provided evidence that Dr. Pirrong was listed as a potential witness on September 17, 18, and 19, 2007 (*Id.*, Exs. F–H). Further, TT demonstrated that Dr. Pirrong attended trial on September 24 and 25, 2007, for the purpose of observing Dr. Ferraro's testimony (*See* Def.'s Resp., Ex. I). We find that Dr. Pirrong's attendance on those dates was reasonably necessary and award TT $1,422.00 in subsistence costs and $280.00 in attendance fees, reflecting Dr. Pirrong's seven days of attendance at trial. However, we deny $120.00 in costs for Dr. Pirrong's attendance on September 26, October 1, and October 2, 2007, because TT has failed to show that his attendance was reasonably necessary.

The remaining issue is whether the challenged travel costs are reasonable. The record shows that five days elapsed between each of Dr. Pirrong's trips to Chicago. Since Dr. Pirrong lives in Houston, a place "so far removed" from his residence as to prohibit his daily return, Dr. Pirrong would ordinarily be entitled to subsistence costs while remaining in Chicago to attend trial. *See* 28 U.S.C. 1821(d)(1). Assuming the maximum subsistence rate of $237.00 per day, Pirrong could have added $2,370.00 to his total costs by remaining in Chicago from September 11–25, 2007 to attend the trial (provided that TT made the requisite showing to recover costs). This total is more than double Dr. Pirrong's challenged flight costs. Given that Dr. Pirrong's trips back to Houston were both reasonable and economical, we award Dr. Pirrong's revised travel costs (*See* Pl.'s Resp., Ex. A), which total $2,096.20.

**5.**

TT requests $40.00 in attendance fees for Raymond Sims (Pl.'s Resp., Ex. A). eSpeed concedes that "[a]t most, TT can recover $40.00 in attendance fees for the day [Mr.] Sims testified" (Def.'s Reply at 6). With no specific objection, we award TT the $40.00 in attendance fees for Raymond Sims.

**6.**

eSpeed objects to '$4,986.00 in subsistence costs for witness Chris Thomas, reflecting 18 days of his attendance at trial (Def.'s Obj. at 8). eSpeed argues that Mr. Thomas is not entitled to subsistence costs because he could have returned to his Chicago home every night after trial (*Id.*). eSpeed further argues that, even if subsistence costs were recoverable for Mr. Thomas, TT cannot claim the maximum allowable subsistence rate because TT has failed to provide any invoices documenting Mr. Thomas's costs (*Id.*). In response, TT argues that it should be awarded full subsistence costs for Mr. Thomas because his role as TT's "primary expert witness" necessitated his stay at the hotel "with the TT team" (Pl.'s Resp. at 8). TT, however, provides no invoices documenting Mr. Thomas's stay. In eSpeed's reply, eSpeed points out that Mr. Thomas's home was located in the Lakeview neighborhood of Chicago (Def.'s Reply at 6), which is within six miles of the courthouse.

Under 28 U.S.C. §§ 1920(3) and 1821(d)(1), a prevailing party is entitled to subsistence expenses for expert witnesses, which include accommodation expenses. However, Section 1821(d)(1) makes clear

that subsistence expenses will only be awarded where "an overnight stay is *required*" because the place of attendance is "so far removed" from the witness's residence as to prohibit daily return. *See* 28 U.S.C. § 1821(d)(1) (emphasis added). Here, Mr. Thomas's overnight stay was clearly not required, as he lived nearby. We can appreciate why TT chose to have Mr. Thomas stay with the TT trial team throughout the trial, including after hours. But, TT is not entitled to have eSpeed pay for that choice. Mr. Thomas's stay at the hotel was not born of reasonable necessity, but mere convenience to TT's counsel, and his subsistence costs thus are not authorized by Section 1821(d)(1). *See Barber,* 7 F.3d at 645 (costs incurred merely for the convenience of counsel may not be recovered); *Cefalu,* 211 F.3d at 427 (the court may only award costs that fall into a statutorily authorized category for reimbursement). We therefore deny TT's request for $4,029.00 in subsistence costs for Mr. Thomas.

eSpeed also objects to $720.00 in attendance fees for Mr. Thomas, arguing that his presence during 18 days of trial was "plainly excessive" (Def.'s Obj. at 8). TT responds that Mr. Thomas was TT's main expert on the issues of infringement and validity (Pl.'s Resp. at 7). TT argues that Mr. Thomas testified on September 19, October 2, and October 3, 2007 (*id.* at 6–7), and provides evidence that Mr. Thomas attended trial on other dates to observe witness testimony, including September 17, 18, 26, and 27, and October 1 and 2, 2007 (*See id.,* Ex. C). TT argues that Mr. Thomas's presence was necessary on all requested dates because "Mr. Thomas was prepared to rebut any issues raised during eSpeed's case-in-chief and provide sur-rebuttal for TT" (*Id.* at 8). In reply, eSpeed argues that TT can only recover attendance fees for the eight days on which Mr. Thomas attended trial to observe other witnesses or to testify (Def.'s Reply at 6).

TT has demonstrated that Mr. Thomas's presence on the requested dates was reasonably necessary. The pre-trial order in this case (doc. # 867–6) confirms Mr. Thomas's function as both a testifying witness in TT's case-in-chief and a rebuttal witness. We also find TT's explanation of Mr. Thomas's role credible. We therefore award TT the requested $720.00 in attendance fees for Mr. Thomas.

### 7.

eSpeed argues that costs for Stephen Kunin's attendance at the inequitable conduct hearing on April 4, 2008, are not recoverable because Mr. Kunin was not present on that date (Def.'s Obj. at 4–5). eSpeed also contends that Mr. Kunin's travel invoice does not provide sufficient detail to support recovery (*Id.* at 5). In response, TT withdraws all requests associated with the mistakenly included April 4, 2008 date (Pl.'s Resp. at 8). TT also attaches a $276.50 air travel receipt (*See* Pl.'s Resp., Ex. J) for Mr. Kunin's flight from the Washington D.C. area to Chicago and reduces its total requested cost for Mr. Kunin from $1,825.57 (Bill of Costs, Ex. 7) to $593.50 (Pl.'s Resp. at 8). In reply, eSpeed argues that, at most, TT can recover $40.00 in attendance fees and $237.00 in subsistence fees for Mr. Kunin's attendance at the inequitable conduct hearing on April 3, 2008 (Def.'s Reply at 6), as well as $138.25 (reflecting half of his airfare) (Def.'s Reply at 6). eSpeed contends that costs for the other half of Mr. Kunin's airfare should be denied because Mr. Kunin enjoyed a one-day stopover in Connecticut before returning home to Washington D.C. (*Id.*).

We grant TT's revised request for $40.00 in attendance fees and $237.00 in subsistence costs for Mr. Kunin. However, Mr. Kunin's side trip in Connecticut resulted in a flight home that was not the shortest route to his residence, and TT

fails to show that the cost of the flight would have been the same without that side trip. We therefore reduce Mr. Kunin's travel costs by half, and award TT a total of S435.25 ($40.00 for attendance fees, $138.25 for travel, and $237.00 for subsistence).

## B.

■ In the original bill of costs, TT seeks $346,995.62 for fees of the court reporter, which encompass: (1) stenographic transcripts of depositions, (2) video-recording of depositions, (3) court reporter appearance fees, and (4) court hearing and trial transcripts (Bill of Costs at 3). In response to eSpeed's objection, TT reduces this request to $153,319.73. In its reply, eSpeed raises several objections to TT's revised calculations for these items.

### 1.

With respect to deposition transcripts, eSpeed argues that TT has exceeded the per page rates set by the Judicial Conference of the United States by requesting costs for services typically not covered, such as rough ASCII, e-transcript, and others (Def.'s Obj. at 9–10). After considering eSpeed's objections, TT agreed to seek only costs associated with the transcripts themselves and "only the lesser of the actual cost or standard per page Judicial Conference rate" (Pl.'s Resp., Ex. K).[6] This results in a revised request of $76,181.11 in costs for more than 140 depositions (*See Id.*).

■ Under 28 U.S.C. § 1920(2), federal courts have authority to tax fees

and disbursements for transcripts "necessarily obtained for use in the case." Recovery, however, is limited by Local Rule 54.1(b) to the copy rate established by the Judicial Conference of the United States at the time the deposition was taken. *See* N.D. Ill. L.R. 54.1(b). During the relevant depositions, the per page rates for original copies were as follows: $3.30 for ordinary transcripts, $4.40 for expedited transcripts, $5.50 for daily transcripts, $6.60 for hourly transcripts, and $2.75 for real time transcripts. N.D. Ill General Order, September 24, 2002.[7] Transcripts need not be "absolutely indispensable" in order to justify an award of costs; a prevailing party need only demonstrate that the transcripts are "reasonably necessary." *Barber*, 7 F.3d at 645. Necessity is determined "in light of the facts known at the time of the deposition...." *Id.*; *Hudson v. Nabisco Brands, Inc.*, 758 F.2d 1237, 1243 (7th Cir.1985).

TT's deposition transcript costs were reasonably necessary. Depositions were used extensively during this case. eSpeed does not object to the number of depositions taken, or argue that any particular depositions were unnecessary or unreasonable. eSpeed also does not object to TT's requests for expedited transcripts in some instances. Since TT's dramatically reduced request now conforms to the Judicial Conference rate, the Court awards TT's revised request of $76,181.11 in deposition transcript costs.

### 2.

In the original bill of costs, TT requested $100,817.13 for costs associated with

6. In its original objection, eSpeed specifically challenged the depositions of Walter Buist, Richard Ferraro, and Amanda Lewis as exceeding the statutory maximum recovery rate (Def.'s Obj. at 10). We note that, by revising its request, TT has reduced the cost of these depositions to conform with the Judicial Conference rate.

7. We note that on September 18, 2007, the Judicial Conference of the United States approved a ten percent increase in transcript and transcript copy rates, which became effective in fiscal year 2008. N.D. Ill. General Order 07–0024, September 18, 2007.

video-recording depositions (Bill of Costs at 3). eSpeed argues that TT cannot recover for both stenographic transcription and video-recording of the same depositions because TT has failed to show that video-recording was "necessary and reasonable" (Def.'s Obj. at 12). In response, TT reduces its request to $16,148,00 and only seeks video-recording expenses for witnesses whom TT claims were "unavailable" under *Engate, Inc. v. Esquire Deposition Svcs. LLC*, 2006 WL 695650, at *2 (N.D.Ill. March 13, 2006) (Pl.'s Resp. at 9; *see* Ex. K). TT argues that, because these witnesses resided outside the court's subpoena power, preserving their deposition by video-recording was necessary (*Id.*). In reply, eSpeed contends that *Engate* actually supports eSpeed's position that TT should not be able to recover costs for video-recording the depositions of U.S. witnesses who reside in the United States.[8]

A prevailing party can recover costs for both a video-recording and a transcript of the same deposition, provided that the party can show both are necessary and reasonable in the context of the case. *Rogers v. City of Chicago*, 2002 WL 423723, at *3 (N.D.Ill. March 15, 2002); *see Little v. Mitsubishi Motors North America*, 514 F.3d 699, 702 (7th Cir.2008) (holding that the district court was authorized to award prevailing party costs for a video-recording and transcript of the same deposition). TT does not argue that the video-recordings of depositions were necessary because they were used during trial. *See Vardon Golf Co., Inc. v. Karsten Mfg. Corp.*, 2003 WL 1720066, at *7 (N.D.Ill. March 31, 2003) (holding that costs for both transcription and video-re-

cording of the same depositions were necessary because "both parties made use of portions of the [video-recorded] depositions during trial"). Rather, TT contends that costs for video-recorded depositions were necessary and thus recoverable under *Engate* simply because the video-recorded witnesses lived outside of the court's subpoena power (*See* Pl.'s Resp., Ex. K).

*Engate* does not support such a blanket award of costs to TT. While the court in *Engate* awarded video-recording costs for two witnesses because they "reside[d] in England," *Engate*, 2006 WL 695650, at *2, the court also denied the same costs for three other witnesses because they "appeal[ed] to reside in the United States, and there is no contention they were believed to be unavailable for trial." *See id.* n. 1. Without providing any other evidence, TT labels certain witnesses as "unavailable" based on the location of their residence. For example, TT describes witness Walter Buist as a "[n]on-party residing in New York and not under the subpoena power of the court; therefore unavailable" (Pl.'s Resp., Ex. K). However, in his deposition, Mr. Buist testified that he was willing to appear at trial (Def.'s Reply Ex. D, W. Buist Dep. at 183–184). The court has previously rejected amorphous notions of "unavailability" like the one espoused by TT. *See BCS Ins. Co., Inc. v. Guy Carpenter & Co.*, 2006 WL 1343218, at *2 (N.D.Ill. May 12, 2006) (rejecting defendant's argument that video-recording costs were necessary because " 'witnesses die,' " and observing that "if this were reason enough on its own to make [video-recording] a necessary cost, all [video-recording] would be

---

8. eSpeed argues that costs for video-recording of depositions should be denied for the following "U.S. witnesses:" William Bautz, Christopher Buist, Walter Buist, Raymond Deux, William Ellis, Richard Friesen, Andrew Griffon, Robert Klinger, Fred Mastro, Robert McCausland, William McHorris, Ankur Shah, and Richard Weisberger (*See* Def.'s Obj. at 7). We note that TT has listed Williams McHorris as being located in Spain (*See* Pl.'s Resp., Ex. K).

recoverable"). Accordingly, we reject TT's claim that the video-recorded deposition of every witness residing outside the court's subpoena power was automatically necessary.

After evaluating the necessity of each video deposition on a case-by-case basis, we find that both stenographic transcription and video-recording was only reasonably necessary for the depositions of witnesses living abroad whom TT disclosed as potential witnesses for trial. There are cases where it would be reasonably necessary to video-record the testimony of witnesses living abroad, given the difficulty associated with procuring their in-person testimony at trial. However, the need to preserve the testimony of a foreign witness is substantially decreased where TT has disclosed no intention of submitting the witness or his or her video-recorded deposition at trial. Similarly, the need for preserving a domestic witness's testimony by video-recording is small when TT has failed to provide a legitimate basis for that witness's proffered "unavailability." In those instances where TT might have obtained the live testimony of a domestic witness, or did not intend to submit the testimony of a foreign witness at trial, having both a transcript and a video-recording of the witness's deposition was purely for TT's convenience. Thus, the corresponding video-recording costs are not recoverable. *See Barber*, 7 F.3d at 645 (courts may not tax costs related to deposition transcripts "provided merely for the convenience of the requesting attorney").

Accordingly, we deny video-recording costs for the following foreign witnesses who were not disclosed in the final pretrial order as potential witnesses for trial: Michael Cartier, Malcom Donaldson, and Paul MacGregor (England); William McHorris (Spain); Barbara Wattiez (Belgium); and Hiroyuki Kida (Japan). We also deny costs for the following witnesses

who reside in the United States: William Bautz, Christopher Buist, and Walter Buist (New York); Raymond Deux (Colorado), William Ellis and Ankur Shah (Virginia); Richard Friesen (California); Andrew Griffin (Mississippi); Robert Klinger (Texas), and Robert McCausland (New Jersey). TT does not list witness Richard Weisberger's residence, but states that he is "not under the subpoena power of the court" (Pl.'s Resp., Ex. K). As explained above, we reject the notion that witnesses outside of the court's subpoena power are automatically "unavailable" for the purposes of awarding costs of video-recording. We therefore deny costs for Mr. Weisberger. In total, we deny $8,704.25 of the video-recording costs sought by TT.

We award video-recording costs for the depositions of the following foreign witnesses who were disclosed in the pre-trial order by TT; Nicholas Garrow, David Feltes, and Neil Treloar (England); Phillip Carré, Laurent Havard, Jean–Cedric Jollant, Marcel Tchitichiama, and Gerard Varjacues (France). We also award costs for the video-recording of Michael Glista of Chicago, based on TT's explanation that TT was "forced to take Mr. Glista's deposition in England, and it was unclear whether he would be available for trial" (*See* Pl.'s Resp., Ex. K). In addition, we award video-recording costs for the "Salans Demo," which TT explains was a "video of a computer demonstration required to preserve [the] demonstration" (Pl.'s Resp. Ex. K). In total, we award $7,443.75 in video-recording costs to TT.

### 3.

 In the original bill of costs, TT requests $12,254.78 in court reporter appearance fees (Bill of Costs at 3). eSpeed argues that court reporter appearance fees cannot be taxed as costs because TT's request for transcript fees already exceeds the per page rate established by the Judi-

cial Conference. Indeed, a court reporter's appearance fee "may be taxed as costs only to the extent that the fee, when added to the per-page rate charged for the deposition transcript, does not make the total charge per page exceed [the Judicial Conference rate]." *Fletcher v. Chicago Rail Link, LLC,* 2007 WL 4557816, at *1 (N.D.Ill. Dec. 20, 2007). However, court reporter appearance fees are no longer at issue here. TT has apparently removed its request for court reporter fees and now only seeks the cost of the transcripts themselves (*See* Pl.'s Resp., Ex. K). We therefore do not award this category of costs.

### 4.

In its original bill of costs, TT requests $116,436.12 in costs for hearing transcripts, which include the preliminary injunction and *Markman* hearings, as well as the jury trial and bench trial on inequitable conduct (Bill of Costs at 4). eSpeed objects, arguing that TT's cost request lacks sufficient information and is "substantially inflated" due to additional costs for non-recoverable items such as "ASCII" and "PDFs" (Def.'s Obj. at 10). In response to eSpeed's objections, TT has eliminated the challenged items, provided more detailed information, and reduced its request to $42,105.19 (Pl.'s Resp. at 9). TT contends that transcripts of the various "extensive and contentious" hearings in this case were necessary because the transcripts were "frequently used in other hearings and briefs" (*Id.*). In reply, eSpeed concedes that, "at most," TT can recover the requested $42,105.19 (Def.'s Reply at 8).

In its response, TT provides sufficient documentation supporting the number of pages and per page rate. Because of the significant role that hearing transcripts played in this litigation, we find that they were reasonably necessary and award TT the requested $42,105.19 in costs for hearings transcripts.

### C.

■ In the original bill of costs, TT requests $947,102.69 in fees and disbursements for outside printing costs (Bill of Costs at 5). eSpeed objects, arguing that TT has failed to show that the copied documents were "necessary for use in the case." eSpeed also contends that TT wrongfully requests costs for more than the three sets of copies permitted in the district, as well as various other "non-copying products" (*Id.* at 16–19). In response, TT reduces its request to $710,327.08 by applying a 75 percent multiplier (Pl.'s Resp. at 10). TT contends that applying a fractional multiplier is best because "it is so difficult to fully describe each copying expense associate[d] with a document-intensive multi-year litigation" (*Id.*). TT argues that additional copies were required because TT was ordered to provide copies of filings and documents to eSpeed's joint-defense partners (*Id.*). In reply, eSpeed argues that TT "cannot excuse its failure to demonstrate that its copying costs were necessary or its improper request for non-copying expenses simply by discounting its request by 25%" (Def.'s Reply at 9).

■ A prevailing party may recover costs for copies that were "necessary for use in the case." 28 U.S.C. § 1920(4). The phrase "for use in the case" refers to "'materials actually prepared for use in presenting evidence to the court....'" *McIlveen v. Stone Container Corp.,* 910 F.2d 1581, 1584 (7th Cir.1990) (citation omitted). These materials include "copies attributable to discovery and copies of pleadings, motions, and memoranda submitted to the court;" they do not include "copies made solely for the convenience of counsel." *Roney v. Illinois Dept. of*

*Transp.*, 2007 WL 1100751, at *1 (N.D.Ill. Apr. 12, 2007) (citations omitted). While the prevailing party must "provide the best breakdown [of copying costs] obtainable from retained records," it is "not required to submit a bill of costs containing a description so detailed as to make it impossible economically to recover photocopying costs," *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 644 (7th Cir.1991).

TT's submission provides the date, invoice number, vendor, and total price for items such as "copying and supplies," "copying and DVD duplication," and "imaging" (*See* Bill of Costs, Ex. 4). From the corresponding invoices, it is clear that TT has expended the claimed amount of copying costs; however, the invoices make no reference to what documents were copied and how many copies were made. Both of these items of information are "needed to permit the Court to ascertain for itself whether the [copying] costs were necessary or were, for example, extra copies made for the sake of convenience." *Engate, Inc. v. Esquire Deposition Svcs. LLC*, 2006 WL 695650, *5 (N.D.Ill. March 13, 2006). Where the prevailing party has failed to provide sufficient information, courts in this district have either reduced copying costs by a substantial percentage, *see Engate*, 2006 WL 695650, *6 (50 percent reduction); *Allscrips Pharmaceuticals, Inc. v. Hazuka*, 1998 WL 1110062, at *1 (N.D.Ill.1998) (25 percent reduction), or denied copying costs entirely, *See Telular*, 2006 WL 1722375, at *4; *Bilal v. BP America Inc.*, 2006 WL 850849, at *2 (N.D.Ill. March 24, 2006); *Fait v. Hummel*, 2002 WL 31433424, at *5 (N.D.Ill. October 30, 2002). TT proposes a 25 percent reduction in costs to account for any expenses that are not recoverable, because TT "would not be able to describe each and every entry without adding hundreds of pages to [its] brief and exhibits" (Pl.'s Resp. at 10).

We recognize that, in a protracted, document-intensive litigation, the Seventh Circuit does not require parties to provide a detailed explanation for the necessity of each page copied. *See Northbrook Excess*, 924 F.2d at 643 (citation omitted) (" 'in the context of a six-year paper war,' " the district court did not abuse its discretion by awarding copying costs even though the prevailing party had failed to identify copied documents). We are also aware of the Federal Circuit's view that "in complex patent litigation involving hundreds of thousands of documents and copies, the parties cannot be expected to track the identity of each photocopied page along with a record of its relevance to the litigation." *See Summit Tech. v. Nidek Co., Ltd.*, 435 F.3d 1371, 1378–79 (Fed.Cir. 2006) (holding that the district court did not abuse its discretion by awarding 50 percent of the prevailing party's copying costs, though the party had failed to identify copied documents). Here, the extensive and contentious proceedings in TT's multiyear litigation undoubtedly generated hundreds of thousands of documents and copies. eSpeed's objection fails to observe that TT did in fact incur substantial copying expenses, many of which were likely necessary and reasonable. Because TT has provided invoices for those expenses, we are not inclined to deny TT's copying costs entirely.

However, we are unable to award TT's total revised request due to concerns that it may still contain expenses for items that are not compensable. For example, TT admits that its original request sought costs for more than three sets of copies for some documents (*see* Bill of Costs at 5). In this district, recovery is generally limited to three sets of copies per document. *See Menasha Corp. v. News Am. Mktg. In–Store, Inc.*, 2003 WL 21788989, at *4, 2003 U.S. Dist. LEXIS 13405, at *11 (N.D.Ill. July 31, 2003).

In addition, TT seeks reimbursement for services and products other than the mere reproduction of documents, including: "supplies," "OCR," "blow-backs," "bates and labels," "coding," "converting images from VHS to DVD," "messenger service," "uploading repository," "foamcore mounting," "CD creation," and "CD duplication" (Bill of Costs, Ex. 4). Costs for services associated with copying are only recoverable "if these services are necessary to reproduce a document in a way that is organized and useful to the opposing party and the court." *First City Sec. v. Shaltiel,* 1993 WL 408370, \*2, 1993 U.S. Dist. LEXIS 14312, \*6 (N.D.Ill. October 6, 1993). However, TT has failed to show that these services were reasonable and necessary, and not merely for the convenience of TT's attorneys.

After balancing the fact that TT incurred considerable—and verifiable—copying expenses in this litigation against the various concerns raised by TT's submission, the Court in its discretion awards 25 percent of TT's original request, This award recognizes that TT inevitably incurred compensable copying costs as a result of this document-intensive litigation. At the same time, we find that a 75 percent reduction in costs prevents a situation where TT benefits from the shortcomings in its proof, by recovering more compensation for costs than it should. Consequently, we award $236,775.74 in copying costs to TT.

### D.

■ TT seeks $1,882,570.55 in fees for exemplification and copies provided by two vendors: Trial Graphix and Focal Point (Bill of Costs at 6). eSpeed argues that TT's request for exemplification costs should be denied because: (1) TT has failed to identify any particular demonstratives or show how they were "necessarily obtained for use in the case," (2) TT's request includes costs for items such as "Strategy Development and Case Management" which are not recoverable under Section 1920(4), and (3) TT cannot recover exemplification costs associated with the pre-trial hearings in this case because only expenses from trial are compensable (Def.'s Obj. at 20–23). TT responds that the "vast number of demonstratives and graphics used" were necessary for both the jury and the court because "one of the primary issues in this case was movement on a computer screen" (Pl.'s Resp. at 11). TT also contends that the "the invoices for Trial Graphix and Focal Point are quite detailed;" the Focal Point invoices, for example, "break down their costs into the following categories: (1) Strategy Development and Case Management, (2) Production (in some instances Production and Design), (3) Graphic & Animation Design and (4) Production Expenses" (*Id.* at 12). TT argues that the term "Strategy Development and Case Management" in Focal Point's invoices is "misleading" because it includes all of the time of Scott Hilton, "who was primarily responsible for preparing and duplicating the exhibits" (*Id.*). TT contends that it is not necessary to identify which costs are associated with which exhibits (*Id.*). In eSpeed's reply, eSpeed argues that TT has ignored the significant authority in this district requiring such information and rejecting many of the same costs now requested by TT (Def.'s Reply at 10).

■ As with photocopies, costs for exemplification cannot be awarded unless the Court determines that the particular exemplifications were "necessarily obtained for use in the case." *Cefalu,* 211 F.3d at 428 (quoting 28 U.S.C. § 1920(4)). In making this determination, the Court must consider whether an item qualifies as an exemplification. *Id.* While Seventh Circuit decisions have expanded the definition of what qualifies as an exemplification to include a "wide variety of exhibits and

demonstrative aids," the cases draw a line "between the cost of conducting the research and analysis eventually reflected in the exhibit, and the cost of actually preparing the exhibit itself." *Id.* at 427–428. The latter expense is compensable under Section 1920(4), while the former is not. *Id.* at 427 n. 5; *Telular,* 2006 WL 1722375, at *5. In determining whether an exemplification expense was reasonably necessary, the court may consider whether the exemplification was "vital to the presentation" or "merely a convenience or, worse, an extravagance." *Cefalu,* 211 F.3d at 428–429. When a prevailing party does not identify the exhibits for which it claims costs, the "court should deny awarding costs for the exhibits because it is impossible to determine whether the costs were necessary for use in the case." *Vigortone Ag Products, Inc. v. PM Ag Products, Inc.,* 2004 WL 1899882, at *8 (N.D.Ill. Aug. 12, 2004) (citing *Fait,* 2002 WL 31433424, at *5).

■ TT fails to provide sufficient information for the Court to show that TT's exemplifications were reasonably necessary for the case. TT does not identify the exhibits created or indicate whether they were admitted at trial. Nor does TT identify the number of work hours attributed to each exhibit. Instead, TT merely provides a bill for general items such as "Production Expenses" and "Graphic & Animation Design" and asserts that whatever exhibits were created using these methods were necessary for use in the case (Pl.'s Resp. at 11–12). But, "[c]onclusory assertions that trial exhibit costs were necessary do not aid a court in assessing the necessity of the costs and determining whether to award exemplification costs." *Vigortone,* 2004 WL 1899882, at *9. TT's omission of any information identifying the exhibits themselves, or the specific work performed in creating each exhibit, is fatal to TT's recovery. *See Telular,* 2006 WL 1722375, at *5 (the court is only able to determine whether an exemplification is necessary "when the prevailing party identifies the exhibits and enumerates the costs associated with the exhibits"); *Cooper v. White,* 2007 WL 647342, at *2 (N.D.Ill. February 28, 2007) (denying plaintiff's costs for exemplification because plaintiff did not identify any exhibits or demonstratives, making it impossible to conclude that the exemplifications were necessary for use in the case); *Vigortone,* 2004 WL 1899882, at *9 (denying exemplification costs where the prevailing party failed to "identify the exhibits or types of exhibits used or the work performed in creating them and [made] no attempt to enumerate the costs [of the exhibits themselves]").

Based on the information provided, this Court cannot determine that any of TT's exemplification costs were reasonably necessary. This is especially true with respect to requested items that go beyond the mere printing of graphics and exhibits. As eSpeed points out, TT's invoices reveal charges from Trial Graphix for services like "Art Director," "InfoDesign Consultant," and "Computer Design Consultant" (*See* Def.'s Obj., Exh. 17, Trial Graphix Invoice No. 134375). In *Telular,* costs for precisely these services from Trial Graphix were denied because the prevailing party "provide[d] no explanation as to why such services were necessary for creating the demonstrative exhibits." 2006 WL 1722375, at *7. Like the prevailing party in *Telular,* TT has failed to show how such consulting services were necessary to creating a demonstrative exhibit, let alone a demonstrative exhibit that was necessary for use in the case. Similarly, TT's explanation for the "Strategy Development and Case Management" cost item from Focal Point fails to show that this type of service is compensable under Section 1920(4).

Based on this record, TT has failed to show that it is entitled to recover the costs

it claims. *See Cefalu,* 211 F.3d at 428–429 (exemplification that is not shown to be reasonably necessary to the presentation of one's case to the court "does not qualify for reimbursement under Section 1920(4)"). We therefore deny TT's request for $1,882,570.55 in costs associated with exemplification and copying.

### E.

■■ TT seeks $118,154.00 [9] in costs for compensation of interpreters, which includes "interpretation services for depositions and trial testimony of non-English speaking witnesses, translating foreign documents, and certification of translations" (Bill of Costs at 6). eSpeed argues that TT cannot recover for interpretation services at trial, because TT has failed to show they were necessary in light of the fact that "other parties retained the official interpreter in most instances" (Def.'s Obj. at 23–24). eSpeed takes issue with two invoices for Japanese to English document translations: one $24,910.00 invoice is for translation of a 350–page document, and the $24,975.00 invoice is for translation of a 400–page document (Def.'s Obj., Ex. 19). eSpeed argues that, based on these invoices, "it is impossible to determine whether the translation services were necessary for trial or merely part of TT's factual investigation" (Def.'s Obj. at 24). In response, TT contends that 28 U.S.C. § 1920(6) does not require TT to demonstrate that interpretation services were necessary (Pl.'s Resp. at 12–13). TT argues that it needed to use check interpreters because of disagreements between the interpreters with respect to particular interpretations (*Id.* at 13). TT argues that the two challenged documents were translated for trial purposes because "eSpeed

and other defendants had provided these documents as prior art on which they might rely at trial" (*Id.*). TT also argues that many of the translated documents "were subsequently actually used at trial by eSpeed and TT," as well as in TT's depositions of "numerous foreign witnesses" (*Id.*). In reply, eSpeed argues that TT "disingenuously" cites to a portion of the trial transcript showing a disagreement over competing translations of documents, rather than any dispute over translations of deposition testimony, "which is the context for TT's actual claim for reimbursement for 'check interpreters' " (Def.'s Reply at 12).

■■ Section 1920(6) authorizes "compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses and costs of special interpretation services under 28 U.S.C. § 1828." 28 U.S.C. § 1920(6) (Section 1828 creates a program providing interpretation services in federal criminal and habeas corpus proceedings). The Seventh Circuit has explained that "the translator of a document is not referred to as an interpreter;" thus, the plain language of Section 1920(6) only authorizes an award of costs for interpreters who orally translate conversation from one language to another. *Extra Equipamentos E Exportacao Ltda. v. Case Corp.,* 541 F.3d 719, 727–28 (7th Cir.2008). Costs associated with the translation of written documents are not recoverable. *Id.; see Horizon Hobby, Inc. v. Ripmax Ltd.,* 2009 WL 3381163, at *7 (C.D.Ill. October 17, 2010) (holding that "[b]ased upon the Seventh Circuit's decision in *Extra Equipamentos,* this court ... cannot award costs for translation of documents").

Because Section 1920(6) does not authorize recovery for the translation of doc-

---

9. We note that the amounts listed for interpreter fees actually add up to $121,064.00

(*See* Bill of Costs, Ex. 6).

uments, we deny TT's costs for translation of the two challenged documents, as well as all other translated documents. *See Cefalu*, 211 F.3d at 427 (a court may only award costs that "fall into one of the categories of costs statutorily authorized for reimbursement"). We therefore deny costs for the following invoices labeled as "Translating documents," "Translation of documents," "Translation of alleged prior art," or "Certification of translation:" # 7761 ($2,545.00), # 7822 ($3,795.00), # 7919 ($1,212.00), # 50511 ($400.00), # 7912 ($12,875.00), # 32423 ($24,910.00), # 105768 ($9,616.00), # 32582 ($600.00), # 32603 ($1,235.00), # 32942 ($24,975.00), # 33418 ($400.00), # 6154 ($7,050.00), # 36767 ($895.00), # 36850 ($120.00), # 36879 ($275.00), # 6165 ($30.00), # 37498 ($90.00), # 37312 ($545.00), # 37449 ($90.00), # 6197 ($2,896.00), # 6199 ($6,483.33), # 6201 ($916.67). We also deny costs for two mixed-purpose items labeled "Interpreting for depositions and document translation" and "Translation of documents and certification of translation:" the first item has no invoice but is described as "Joanna Dezio, 4/26/2007" ($7,390.00), and the second item is invoice # 6166 ($270.00). Since the information provided by TT provides no method for separating out the translation portion of costs associated with these items, we deny those costs in their entirety. The total translation cost denied to TT is $109,614.00.[10]

eSpeed argues that TT's oral interpretation costs should be denied because TT has failed to show that its interpretation services "were actually necessary for trial." In support, eSpeed cites *Whirlpool Corp. v. LG Electronics, Inc.*, 2007 WL 2462659 (W.D.Mich. August 26, 2007), a case explaining that, in the Sixth Circuit, prevailing parties must demonstrate that interpretation fees are "reasonable and necessary" in order to recover. 2007 WL 2462659, at *4. However, TT's explanation for procuring its own oral interpreters is satisfactory.

TT provides evidence that a disagreement with respect to competing interpretations occurred during trial (Pl.'s Resp., Ex. 13). While this disagreement may have centered on a translated document, any disagreement with respect to an interpretation is sufficient to alert a party to the need for hiring its own interpreter. TT has explained that this litigation involved depositions of numerous foreign witnesses regarding several foreign language documents. We find that TT's explanation for its use of so-called "check interpreters" meets the standard for recovery set by Section 1920(6). Accordingly, we award TT's verifiable costs associated with oral interpretation, as reflected by the following invoices marked "Interpreting for depositions" or "Interpreting for trial:" # 10839 ($2,000), # 11170 ($1,950), # 11684 ($1,225.00), # 759 ($455.00). However, because invoices are missing for three items of interpretation costs, we decline to award the associated costs. These three items are identified as "Deborah Joyce, 5/1/2007" ($455.00), "Joanna Dezio, 9/6/2007" ($2,000), and "Deborah Joyce, 9/27/2007" ($455.00).

In total, we award $5,630.00 in costs for interpretation to TT. We deny $2,910 in undocumented interpretation costs.

### F.

■ TT seeks $2,2025.45 in costs for process service and witness appearance fees (Bill of Costs at 2). eSpeed argues that TT cannot recover the requested

---

**10.** Because translation costs for TT's documents are not recoverable under Section 1920, we need not address eSpeed's argument that certain translated documents may have been procured by TT for investigative purposes.

$1,534.45 in service of process fees because TT's invoices "do not detail the time required to effectuate service, where service took place, or why rush service was necessary" (Def.'s Obj. at 25). eSpeed contends that, without more detail, TT· may only recover a maximum of $40.00 per witness (the minimum U.S. Marshals service charge) yielding a total of $509.90 (*Id.*). TT responds by arguing that the "majority of invoices do specify where the subpoena was served" and the remaining addresses can be found within subpoenas submitted to eSpeed (Pl.'s Resp. at 14). TT contends that, as of 2002, the rate for Marshal's service was actually $45.00 per hour, plus $0,365 per mile (*Id.*). In reply, eSpeed concedes that the service rate provided by TT is correct and now claims that TT is entitled to "no more than $818.84" in summons and subpoena fees (Def.'s Reply at 13).

Fees for service of process are recoverable under 28 U.S.C. § 1920(1), but may not exceed the U.S. Marshals rate at the time process was served. *Collins v. Gorman,* 96 F.3d 1057, 1060 (7th Cir.1996), As of 2002, the U.S. Marshals Service charges were $45.00 per hour, plus $0.365 per mile. *Chamberlain Group, Inc. v. Interlogix, Inc.,* 2002 WL 31176068, at *3 (N.D.Ill. 2002).

TT's request for process service fees does not provide enough information to support a full recovery. TT admits that not all invoices contain the location of service (*See* Pl.'s Resp.).[11] Further, TT does not indicate the amount of time required to effectuate service or why rush service was used. For example, TT requests $351.00 for the September 12, 2007 service of Warren Smith, but provides no explanation justifying this comparatively high cost. Without this information, the Court cannot assess the necessity and reasonableness of TT's service fees. Consequently, we award the minimum per witness rate charged for Marshals service ($45.00 for a single hour) for any of TT's service costs exceeding the minimum. *See Johnson v. City of Elgin,* 2002 WL 171971, at *5 (N.D.Ill. Feb. 1, 2002) (awarding the minimum charge of one hour of Marshal's service where the prevailing party "[did] not state where service was accomplished, how long it took, or why 'rush' service was necessary"). In light of TT's attempt to serve witness Dale Martin four times, we will apply the minimum Marshal's service rate for each attempt.

We apply the following service costs for each deponent: Steve Brucato ($45.00), Cactus Technologies ($45.00), Patsystems ($45.00), Chicago Mercantile Exchange, Inc. ($34.50), Matthew Kelly ($34.50), Harrison Trading Group ($45.00), RHO Trading Securities, LLC ($45.00), Amanda Lewis ($45.00), Dale Martin ($180.00), Daniel Durkin ($45.00), Warren Smith ($90.00–reflecting two dates), GeoText Translations, Inc. ($45.00), and LIFFE ($45.00). In total, we award $744.00 in service of process fees to TT.

In its original submission, eSpeed does not object to $491.00 in requested costs for witness appearance fees.[12] Therefore, we

---

11. TT has not attached any invoices to its request for costs of service. While TT later supplemented its bill of costs by providing a box of invoices, the Court has been unable to locate any invoices that correspond with the invoice numbers provided in TT's request for service costs (*See* Bill of Costs, Ex. 1).

12. In eSpeed's reply, eSpeed objects to TT's witness fees for the first time, arguing that

"TT cannot recover witness fees for depositions that TT admits never occurred," including "Catus Technologies, Matthew Kelly, Dale Martin, and Gelber Securities" (Def.'s Reply at 13). As TT observed in its response, eSpeed originally raised no objection to TT's $491.00 request for witness fees (*See* Pl.'s Resp. at 14). It is improper to raise arguments for the first time in a reply because this

award $491.00 in witness appearance fees to TT. *See Allscrips*, 1998 WL 1110062 at *2 (to avoid costs, the losing party must show they are not justified).

## G.

Finally, we turn to eSpeed's request that this Court deny all printing, copying, and exemplification fees "that relate directly to subjects where eSpeed was plainly the 'prevailing party;' " including; (1) the February 21, 2007 deposition of James Davies and the July 27, 28, and 29, 2005 depositions of Joe Noviello that "relate primarily" to eSpeed's non-infringing products, (2) the May 16 and August 16, 2006 transcripts of the *Markman* hearing, which eSpeed argues resulted in a claim construction favorable to eSpeed, (3) the February 24, March 7, and March 10, 2006 and December 20, 2007 transcripts of court hearings which eSpeed argues are "relat[ed] to the other lawsuits filed by TT" (Def.'s Obj. at 14–15), (4) the portion of the jury trial transcript pertaining to testimony on the willfulness issue (*Id.* at 15), and (5) any exemplification or copying costs associated with the preliminary injunction hearing, *Markman* hearing, and the willfulness portion of the jury trial (*Id.* at 23). In response, TT argues that it should recover for all depositions because "only portions" of the challenged depositions "were related to issues on which [eSpeed] eventually prevailed" and "the Court is not obligated to apportion costs based on 'relative success'" (Pl.'s Resp. at 9). In reply, eSpeed contends that this Court "plainly has the discretion to apportion costs" (Def.'s Reply at 7).

■ Federal courts have broad discretion to determine "whether and to what extent to award costs." *Barber*, 7 F.3d at 644 (quotation marks and citation omitted); *see Cefalu*, 211 F.3d at 429 (observing that "[i]n all cases" the court "retains the equitable authority to deny compensation to a prevailing party for costs that are [otherwise] compensable"). Accordingly, case law recognizes the discretion of courts to reduce the prevailing party's award of costs in order to reflect the losing party's partial success. *See Kemin*, 464 F.3d at 1348; *Barber v. T.D. Williamson, Inc.*, 254 F.3d 1223, 1235 (10th Cir.2001); *Simmons v. American Export Lines, Inc.*, 26 F.R.D. 111, 112 (S.D.N.Y.1960); *Leeds & Northrup Co. v. Doble Engineering Co.*, 41 F.Supp. 951, 952 (D.C.Mass.1941); *see also* Wright & Miller, *Federal Practice & Procedure*, 10 Fed. Prac. & Proc. Civ. § 2667 (3d ed.2010), However, apportionment of costs based on the relative success of the parties is only appropriate when "the costs incurred are greatly disproportionate to the relief obtained." *Kemin*, 464 F.3d at 1348. Even then, "there is no rule requiring courts to apportion costs." *Id.*

Since we have already denied TT's exemplification and copying costs on other grounds, the only remaining issue is whether to apportion TT's award of printing costs. In our discretion, we decline to embark on an effort to apportion these costs for three reasons.

*First*, this is not a case where the plaintiff prevailed on only a small portion of the issues in the litigation. *See Steel Const. Co. v. Louisiana Highway Com'n*, 60

deprives the other party of art opportunity to respond. *Marie O. v. Edgar*, 131 F.3d 610, 614 n. 7 (7th Cir.1997) (matters raised for the first time in a reply are waived). Because eSpeed's objection to TT's witness fees was raised at the reply stage, we will not consider it. However, we note that the Seventh Circuit has held that it is not improper to award

costs for fees paid to witnesses "who were subpoenaed and given notices of depositions, but whose depositions were never actually taken." *See Haroco v. American Nat. Bank and Trust Co. of Chicago*, 38 F.3d 1429, 1442 (7th Cir.1994) (citing *Spanish Action Comm. of Chicago v. City of Chicago*, 811 F.2d 1129 (7th Cir.1987)).

F.Supp. 183, 193 (D.C.La.1945) (apportioning costs because over nine-tenths of the record related to matters where the plaintiff was unsuccessful). TT demonstrated eSpeed's infringement of two patents, defeated assertions of invalidity and unenforceability, obtained a money damage award of more than S2.5 million, and obtained a permanent injunction against eSpeed's future production and sale of the infringing products. To be sure, this is not everything that TT sought. However, in the context of this litigation, TT's success is significant enough to militate against the apportionment of costs. *See Kemin,* 464 F.3d at 1348 (district court did not abuse its discretion by refusing to apportion costs where plaintiff had prevailed on one of its two infringement claims, as well as defendant's invalidity and unenforceability claims).

*Second,* eSpeed has not provided a principled way to perform the apportionment that it seeks. for instance, eSpeed asks this Court to cull all witness testimony on the issue of willfulness from the trial transcript and assign it a value by which to reduce TT's award (Def.'s Obj. at 15). But, the testimony of each witness might have gone to multiple issues. The same is true of the challenged depositions, which TT contends were only partially related to issues upon which eSpeed prevailed (*See* Pl.'s Resp. at 9). In the context of attorney's fee awards, the Seventh Circuit has held that "[i]t is proper ... for the court to adjust a fee downward to account for unsuccessful claims, but such an adjustment is frequently inappropriate where the claims are so closely tied together" as to make them inseparable for purposes of recovery. *Smith v. Great American Restaurants, Inc.,* 969 F.2d 430, 440 (7th Cir. 1992). In such cases, the Court emphasizes that fees should not be reduced by an arbitrary percentage. *Id.* at 440. We find this analysis instructive here, and decline eSpeed's invitation to reduce TT's costs arbitrarily, based on testimony that might have gone to multiple issues, including those upon which TT prevailed.

*Third,* for reasons explained above, we have already substantially reduced TT's costs from $2,887,117.56 to $381,831.04. Although this award is more than the $147,190.45 amount suggested by eSpeed, it is only a fraction of TT's original (and revised) costs. Under these circumstances, equitable considerations do not justify a further reduction of TT's award.

For these reasons, we deny eSpeed's request to apportion TT's printing costs.

## CONCLUSION

For the foregoing reasons, this Court rules as follows: (1) we deny eSpeed's motion to strike TT's bill of costs (doc. # 1288); (2) we deny eSpeed's motion to stay costs pending appeal (doc. # 1288); and (3) we grant in part and deny in part TT's bill of costs (doc. # 1272, 1283) as revised in TT's response brief (# 1297), and award TT costs in the amount of $381,831.04 (as reflected in the chart below).

| Requested Item | TT's Revised Costs | Costs Awarded |
|---|---|---|
| Witness Fees | $ 20,720.40 | $ 12,460.25 |
| Fees of the Court Reporter | $ 153,319.73 | $125,730.05 |
| Printing Fees | $ 710,327.08 | $236,775.74 |
| Copies and Exemplification | $1,882,570.55 | $0 |
| Interpretation Fees | $ 118,154.00 | $ 5,630.00 |
| Service and Witness Fees | $ 2,025.45 | $ 1,235.00 |
| Total | $2,887,117.56 | $381,831.04 |